VERMONT MUTUAL FIRE INSURANCE CO. *v.* CLAUDE VAN DYKE.

January Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed May 2, 1933.

*Harry B. Amey* and *Searles & Graves* for the defendant.

*Theriault & Hunt* for the plaintiff.

POWERS, C. J.   Romauld Paradis, the owner of certain farm buildings in East Hereford, P. Q., took out a fire insurance policy thereon in the plaintiff company.   By its terms, any loss thereunder was payable to the defendant, as mortgagee, as his interest might appear.   This provision was embodied in an "open mortgage" clause, so-called.   The policy contained the usual provisions against encumbrances, change of title, and concealment or misrepresentation before or after loss—breach of which was to render the policy void.   While the policy was in force and without change material here, some of the buildings covered were destroyed by fire.   In due time, Paradis executed a proof of loss and therein made oath that there was no other insurance on the property except one policy which was mentioned in the

plaintiff's policy. This was deliberately false. There was at that time a policy in the International Insurance Co., of Montreal, which Paradis had procured, covering a building insured by the plaintiff, to the amount of $3,500.00.

Paradis also swore in the proof of loss that there was no encumbrance on the property, except the mortgage to the defendant. This, too, was deliberately false. During the time the policy had been in force, Paradis had put three other mortgages onto the property covered, and these remained as encumbrances thereon at the time the proof of loss was executed.

Relying upon the facts set forth in the proof of loss, and knowing nothing to the contrary, the plaintiff paid its share of the loss by a check payable to Paradis and the defendant. Paradis indorsed the check and turned it over to the defendant. The latter indorsed it, and passed it to the Colebrook Guaranty Savings Bank to which he was indebted on a loan for which he had pledged the Paradis mortgage. The check was credited accordingly.

Later on, the plaintiff discovered Paradis' fraud and false swearing; and having made an unsuccessful demand on the defendant for a return of the amount paid as aforesaid, brought this suit. The complaint is in the form of general assumpsit, with the money counts relied upon. On a general denial, the case was tried below by the court, and on facts found judgment was rendered for the plaintiff to recover the amount of the check referred to, with interest thereon. The defendant excepted. The plaintiff also excepted to the allowance of the defendant's exceptions taken during the trial, and to the refusal of the court to grant a certified execution.

▊ The defendant claims that this policy covering property in the Dominion of Canada was to be governed by the Canadian law. To this we cannot agree. There being nothing in the policy indicating that the parties intended anything to the contrary, the ordinary rule that the law of the place where the contract was made is to govern its validity, its interpretation, and its construction, applies. Richards on Ins. § 76; 26 C. J. 38; *Kustoff* v. *Stuyvesant Ins. Co.*, 160 Tenn. 208, 212, 22 S. W. (2d) 356; *Liverpool, etc., S. Co.* v. *Phenix Ins. Co.*, 129 U. S. 397, 453, 458, 32 L. ed. 788, 9 Sup. Ct. 469; *Smith* v. *Anderson*, 70 Vt. 424, 426, 41 Atl. 441; *Hartford S. B. Inspection & Ins.*

*Co.* v. *Lasher Stocking Co.,* 66 Vt. 439, 446, 29 Atl. 629, 44 A. S. R. 859.

The policy was executed in Vermont and is a Vermont contract, though this fact makes little if any difference, as we view the case.

■ ■ That the plaintiff could maintain a suit against Paradis to recover this money is too plain to be denied. That it made no contract ·with the defendant, that the latter's right to collect the insurance was derivative, only, and that he was Paradis' appointee, are propositions fully established by *Girard* v. *Vermont Mutual Fire Ins. Co.,* 103 Vt. 330, 154 Atl. 666. That, because of Paradis' fraud, the defendant could not have maintained a suit on the policy for his own benefit, necessarily results from that case. It is generally so held. *Dawson* v. *Insurance Co.,* 192 N. C. 312, 317, 135 S. E. 34; *Jaskulski* v. *Citizens Mutual Fire Ins. Co.,* 131 Mich. 603, 605, 92 N. W. 98; *St. Paul F. & M. Ins. Co.* v. *Ruddy* (C. C. A.), 299 Fed. 189, 197; *Wyley* v. *Federal Ins. Co.,* 136 Wash. 686, 689, 241 Pac. 292; *Keith* v. *Royal Ins. Co.,* 117 Wis. 531, 538, 94 N. W. 295.

■■ It does not follow, however, that this suit can be maintained. The rule by which a recovery could be had from Paradis is, ordinarily, limited to payments *inter partes* and has no application to third persons to whom a debtor has paid what he supposed he owed his creditor. The rule is thus stated by Prof. Williston: "When A, under a mistaken belief in his liability to B, on direction of the latter, pays C a claim which C has against B, A cannot recover the payment from C. If the payment was voluntarily and intentionally paid by A to C to satisfy the latter's claim against B, and C had a genuine claim against B, it seems clear that no recovery should be allowed. C is a purchaser of the money for value and in good faith." 3 Williston, Contracts, § 1574.

In such cases, when the money is received by C, his rights are just what they would be if he had received it from B, as we shall presently see.

■ This action of assumpsit is an equitable action; and before it can be maintained, it must be made to appear that the defendant has received money or its equivalent which, *ex aequo et bono,* belongs to .the plaintiff. *Claflin* v. *Godfrey,* 21 Pick. (Mass.) 1, 6; *Winslow* v. *Anderson,* 78 N. H. 478, 102 Atl. 310,

L. R. A. 1918C, 173, 175; *Williamson* v. *Johnson,* 62 Vt. 378, 385, 20 Atl. 279, 9 L. R. A. 277, 22 A. S. R. 117.

This defendant was paid the amount of the check by appointment of Paradis. So far as the receipt of the money is concerned, he represented Paradis to the extent that in legal effect the payment discharged the plaintiff. But that is as far as the representation went. The defendant received the money as his own and to his own use. He received it from Paradis, by the hand of the plaintiff, as a payment of or on a valid debt. The plaintiff paid it to him, not by force of any contract it had with him, but because it was directed by Paradis so to do. In this respect, the case is like *Atwell* v. *Jenkins,* 163 Mass. 362, 40 N. E. 178, 179, 28 L. R. A. 694, 47 A. S. R. 463, where Hoes induced Atwell to send money to Jenkins, Hoes' lawyer. Matters so turned out that the money was not used for the purpose intended, and Atwell sued Jenkins to recover it. "It hardly needs to be said," says Justice Holmes, "that this transaction made no contract between the plaintiff and the defendant. The plaintiff's advance was to Hoes. When the money was received by Jenkins, it was received by Hoes, as between them and the plaintiff, and if the defendant kept it, that was by arrangement between him and Hoes, with which the plaintiff had nothing to do." Recovery was denied.

It must be kept in mind all along that this defendant has made no mistake and has been guilty of no fault. It was said by Chief Justice Tilghman in *Bogart* v. *Nevins,* 6 Serg. & R. (Pa.) 361, 368, that "no case had been shown, where an action for money had and received has been supported against a person who has received a just debt, without fraud." The proposition embodied in this statement applies here. That case was this: A, having accepted two bills of exchange, sent his clerk to the person who, as agent of different owners, had the bills in his custody, with instructions to take up one of them. The clerk, by mistake, took up the other bill and brought it to A, who struck out his name under the acceptance. A few minutes later, he rewrote his name under the acceptance and sent it back to the agent of the owners, who received it and surrendered the other bill. It was held that the bill first given up was paid.

In *Walker* v. *Conant,* 69 Mich, 321, 37 N. W. 292, 13 A. S. R. 391, Van Riper obtained a sum of money from the plaintiff upon a forged mortgage, and out of it paid the defendant a debt he

owed her. The money was honestly her due, and she had a right to receive it as she did. She gave up her securities in utter ignorance of the fraud perpetrated upon the plaintiff by Van Riper. It was held that the plaintiff could not recover the money which she had received. The decision was put on the ground that one who receives money in good faith, in the ordinary course of business, and for a valuable consideration, cannot be compelled to pay it back because it was fraudulently procured by the payor.

So, too, in *Rankin* v. *Chase Nat. Bank*, 188 U. S. 557, 47 L. ed. 594, 597, 23 Sup. Ct. 372, it was held that one who has in good faith received money in payment of an existing debt, cannot be compelled to repay it when it subsequently appears that it was embezzled by the payor.

Again, in *State Bank* v. *United States*, 114 U. S. 401, 29 L. ed. 149, 5 Sup. Ct. 888, a case wherein one Carter, by the connivance of a clerk in the office of the assistant treasurer of the United States, unlawfully obtained from that office money belonging to the United States, and to replace it delivered to the clerk money which he obtained by fraud from the plaintiff, it was held that, since the clerk had no knowledge of the fraud, the money could not be recovered.

We do not overlook the fact that in the three cases just referred to the money was paid directly by the debtor and not by a third person as here. Their importance here lies in the proposition that the law regards payments made by third persons to be the same in effect.

Thus in *Windsor* v. *Anderson*, 78 N. H. 478, 102 Atl. 310, L. R. A. 1918C, 173, the surety on a contractor's bond, in good faith, received from the plaintiff more money than it turned out was due the principal. These payments were made on the latter's orders, and the money was applied by the surety to the principal's business. Thereafter, it was discovered that the contractor's account had been overpaid, and this suit was brought against the surety to recover the overpayment. It was held that there could be no recovery. "In legal effect," says the court, "the money was paid to Otto (principal) and by him to the defendant."

In *Ball* v. *Shepard*, 202 N. Y. 247, 256, 95 N. E. 719, the court distinguishes cases where the fraud or mistake is between the parties to the suit and those where the mistake of the payor

is induced by the fraud of a third person and the payee in ignorance of the truth receives the money in good faith; and holds that the case in hand was one of the latter class and that recovery could not be had. This case is of further interest in that it held that the fact that the payment was made by check was of no consequence, inasmuch as it was paid, and that made it the same as though money had been paid in the first instance. Many cases could be cited to this point.

*Cincinnati Ins. Co.* v. *Rieman & Sons,* 3 Ohio Dec. Reprint, 280, is much in point here. The plaintiff insured Smith & Kissane under a policy which contained a clause making "the loss, if any, payable to H. Rieman & Sons." A loss having occured, the plaintiff, induced by the fraud of Smith & Kissane, paid the amount thereof to Rieman & Sons. Later, having discovered the fraud, the plaintiff brought this suit seeking to recover the amount so paid. It was held that the suit could not be maintained; that the fraud relied upon could not affect the right of Rieman & Sons to retain the money received by them in good faith in discharge of a just debt; and that, in legal effect, their situation was the same as if the money had been paid them by Smith & Kissane. This case was affirmed in Disney 396, with approval of the proposition that a payment, made to a person on account of a just debt, when there is no fraud, express or implied, between the payor and payee, cannot be recovered.

We regard *Merchants' Ins. Co.* v. *Abbott et al.,* 131 Mass. 397, as directly in point. There the plaintiff insured a woolen mill owned by Abbott, and it burned. At the time of the fire, Abbott owed Denny, Rice & Co. the sum of $4,000. Thereafter, Abbott assigned to Denny, Rice & Co., as security for the amount unpaid on said debt, his claim against the plaintiff on account of the fire. Still later, the plaintiff, in good faith and in ignorance of any fraud on Abbott's part, paid to Denny, Rice & Co. the amount at which the loss under the policy was adjusted. It subsequently developed that Abbott caused the fire and that his proof of loss was false and fraudulent. Then this suit was brought against Abbott and the members of the firm of Denny, Rice & Co. After calling attention to the fact that the plaintiff was entitled to a recovery from Abbott, that Denny, Rice & Co. would have been obliged to return the money if they had participated in Abbott's fraud, and that Denny, Rice & Co. could only have sued the plaintiff in Abbott's name and sub-

ject to any defenses that the plaintiff had against him, the court held that the case was just as it would have been if the money had been paid by the plaintiff to Abbott, and by him to Denny, Rice & Co., and that the fact that the money was paid by the plaintiff to Denny, Rice & Co. did not affect the rights of the parties. A recovery against Denny, Rice & Co. was denied. This case was approved in *Moors* v. *Bird*, 190 Mass. 400, 410, 77 N. E. 643, and is so well reasoned and so fully sustained by authorities cited in the opinion that we unhesitatingly adopt it as expressing the law of the case before us. To be sure, by the authority of the Girard Case, *supra,* the defendant here is an appointee, while in the case just reviewed Denny, Rice & Co. was an assignee. But in respect of their rights now in question there is no difference in their legal standing.

■ This view of the case renders unnecessary any consideration of the plaintiff's exceptions, since trial errors, if any, were harmless in view of the result.

*Judgment reversed, and judgment for the defendant to recover his costs.*