**FARM BUREAU MUTUAL AUTOMO·
BILE INSURANCE COMPANY,**
Appellee,

v.

**Charles E. BASCOM, Robert E. Bascom
and Albin Boroski, Appellants.**

**No. 153, Docket 26448.**

United States Court of Appeals
Second Circuit.

Argued Jan. 11, 1961.

Decided Feb. 15, 1961.

Jon O. Newman, Hartford, Conn., for appellants.

Francis J. McCarthy, Warren Maxwell, Edward J. Foley, Hartford, Conn., for appellee.

Before LUMBARD, Chief Judge, and CLARK and HAND, Circuit Judges.

HAND, Circuit Judge.

This appeal is from a judgment in an action based upon diversity of citizenship, declaring the plaintiff not liable upon two accident liability policies. Judge Smith found the facts as follows. The defendants, Charles Bascom, and Robert, his son, owned motorcars, on each of which the plaintiff had issued an accident insurance policy. A friend, named Boroski, the two Bascoms and two other friends had been at a race track, and all five were going back home in the son's car. On the way the car left the roadway and collided with a bordering fence. Boroski's arm, which extended outside the car, was struck by the fence and was so much injured that it had to be amputated. At the hospital immediately after the accident both the father and the son told the police that the father had been driving, and two days later the father filed with the Connecticut Motor Vehicle Department a sworn statement, reporting that he had been the driver. Six days after the accident the father told the same story to the insurer, and the son confirmed it several months later, as did also the two friends who had been passengers.

Boroski sued both the father and son four months after the accident, alleging that the father was driving, and the plaintiff as insurer took over the defense of the action and answered, admitting that the father was driving. About eleven months after the accident both father and son came to the insurer and said that in fact it was the son who had been driving, and three months later the insurer amended its answer accordingly. The reason given by the Bascoms for the deliberate fabrication of the first version was that, if the father had been driving, his negligence would not have affected the son's driving license which was essential to the continued exercise of the son's business. The son would nevertheless have been liable for his father's fault because the Connecticut statute imputes to the owner of a motorcar the negligence of anyone whom he allows to drive it.

At the trial of the tort action Boroski swore that the father was driving, which, however, the Bascoms and one of the passengers denied, swearing that the son was at the wheel. The jury found by a special verdict that the driver had been the father and returned a verdict for the plaintiff against both defendants. The Bascoms' excuse was that the driver had been blinded by the headlights of an oncoming car, a version of the evidence that the jury obviously did not accept. The later statements of the Bascoms had been used to impeach their testimony at the trial, and the question is whether their change of position as to who was driving constituted a breach of the covenant in the policies that the insured would "cooperate" with the insurer in the defense

of any action brought against the insured, and if so, whether they were a defense against Boroski's claim.

It is indeed impossible to know how far such a contradiction in the testimony of a witness generally discredits the testimony on which his offense depends; but it is obviously true that an insured has not "cooperated" with the insurer, if he deliberately induces the insurer to plead what he believes to be false, even though he later recants. The insurer is entitled to the insured's recollection of the whole transaction, and the insured has not fulfilled his contract if at any time he fabricates what he does not believe and the insurer innocently takes a position in accordance with the fabrication. If it appears that he, the insured, is ready deliberately to put forward a false statement upon one relevant fact, his testimony as to what actually happened is ordinarily much impaired.

The two Connecticut decisions which have interpreted the clause promising "cooperation" did not indeed decide that every deliberate lie told by the insured in the trial of the tort is inevitably a defense against his claim on the policy. In Guerin v. Indemnity Insurance Co., 107 Conn. 649, 142 A. 268, 271, the court said: "It is not found that there was any failure to furnish information to the defendant"—the insurer—"nor that the information furnished was intentionally false." This cannot be taken as a decision that a deliberately false version, even though later concocted, will in no circumstances be a defense to the insurer. In the second appeal in Rochon v. Preferred Accident Ins. Co., 118 Conn. 190, 198, 171 A. 429, 432, the court plainly meant to leave open the question whether the "untruthfulness of a statement made by the assured to the insurer as to the circumstances of an accident does not of itself necessarily constitute a breach * * * of the policy." However, "the fact that Duphiney gave testimony upon the trial * * * that, if believed by the trier, * * * would have freed the defendant from liability * * * might have material weight in determining whether, by his conduct, the interests of the defendant have been adversely affected in a substantial and material way."

It seems to us that any deliberate falsification as to an issue involved in the case, even collaterally, is a failure of the cooperation promised by the insured, but it is not necessary to hold that every such failure will inevitably defeat the insured's claim. In the case at bar, we know that the jury incorrectly decided the particular issue as to who was driving the car, but we do not know how far the change in the insureds' stories as to the driver discredited their testimony exonerating them from liability. Having failed to cooperate it lay upon them to show that their failure had no effect upon the verdict. Judge Smith at least thought that it had had effect, for he said that "the furnishing of the false statements as to who was driving adhered to in the formal pleadings unquestionably destroyed any hope for a successful defense based on the credibility of the Bascoms' testimony." It is not necessary to go so far as Valladao v. Firemen's Fund Ind. Co., 13 Cal.2d 322, 89 P.2d 643, and hold that such lack of cooperation is *ipso facto* a defense, regardless of its effect.* But certainly the Connecticut decisions do not forbid our holding that, when the insurer proves a breach of the insured's promise to "cooperate," the burden falls upon the insured to show that the breach was not a factor in determining the jury not to accept the insured's excuse for the accident. The Bascoms have not discharged that burden.

Judgment affirmed.

* Ciaccio v. Norfolk and Dedham Mutual Fire Ins. Co., R.I.1960, 158 A.2d 277.