Cheshire,
No. 5668.

EMPLOYERS MUTUAL CAS. CO.

*v.*

IRVIN R. NELSON &a.

Argued December 5, 1967.
Decided April 30, 1968.

*Sheehan, Phinney, Bass & Green,* and *Thomas H. Richards* ( *Mr. William L. Phinney* orally ), for the plaintiff.

*William D. Tribble,* for the named defendant, filed no brief.

*McLane, Carleton, Graf, Greene & Brown,* and *Jack B. Middleton.* ( *Mr. Middleton* orally ), for the defendant Isabelle M. Nelson.

DUNCAN, J. This is a petition by an insurer under a family automobile policy issued to the named defendant Nelson, seeking a decree that the plaintiff is not obligated to defend an action in tort brought against Nelson by his wife, the defendant Isabelle,

or to satisfy any judgment in her favor, by reason of Nelson's alleged failure to cooperate with the insurance company as required by the policy. Trial by the Court (*Loughlin,* J.). The exceptions of the defendants to certain findings and rulings and to the denial of a request by the defendant Isabelle for a finding that "There is no evidence of any fraudulent conduct on the part of Dr. Nelson," were reserved and transferred by the Presiding Justice.

The litigation arises out of a collision which occurred at Dover on May 19, 1963 at approximately 8:40 P.M. The Nelsons were proceeding westerly on Route 155 in Dover, travelling from property which they owned in Wells, Maine, to their home in Jaffrey, New Hampshire. Between the overpass crossing the Spaulding Turnpike and the intersection of Bellamy Road with Route 155 to the west, the insured Saab, operated by the defendant Irvin Nelson was in a head-on collision in the westbound lane with a Ford sedan operated by John Cheetham. The weather was dry and clear, it was dark, and the headlights of both vehicles were lighted. Cheetham was arrested at the scene and subsequently convicted of driving while under the influence. Both defendants were seriously injured, and were taken by ambulance to the Dover Hospital.

Suits brought against Cheetham by the defendants herein were subsequently settled for $10,000 in each case, the limits of liability provided by Cheetham's insurance. The defendant Irvin gave a release, and the defendant Isabelle a covenant not to sue, both under date of November 4, 1963.

There was evidence that at sometime thereafter, as a result of a newspaper item which she read, Mrs. Nelson informed her husband that she proposed to sue him. She testified that wholly independently of her husband, she then retained her present counsel, who brought a tort action for her against her husband by writ dated November 19, 1964.

The basis for the petition for declaratory judgment and the charge of non-cooperation arises out of alleged inconsistencies between statements given by the defendant Irvin before trial, and his testimony on deposition and at the trial. Following the accident, the defendant filed a motor vehicle report dated June 10, 1963, which was prepared by counsel who represented him at that time. It stated briefly that the Cheetham car "drove over on my side of the road and ran into me." It asserted: "I did all

I could to avoid the accident"; and that Cheetham "was fully to blame for the accident."

On September 17, 1963, while still recovering from his injuries at Wells Beach, Nelson gave a written statement to an adjuster which reviewed in greater detail the events leading up to the collision. It stated that as he came over the overpass, Nelson saw the approaching vehicle 400 to 450 feet away, and west of Bellamy Road; that it started to come over onto Nelson's side of the road, that Nelson expected it to turn back, and that in a final attempt to avoid collision, Nelson turned to his left when the other car was "probably one car length" away.

After the suits against Cheetham were settled and suit had been brought by Isabelle Nelson against her husband, the plaintiff sought and obtained on December 21, 1964 another statement from Nelson, which was also given in the presence of his present counsel. This statement varied slightly from the one given in September 1963, in that it stated that Nelson saw the other car about 400 feet away when Nelson was on the overpass, that the approaching vehicle was then straddling the center line, and that it became wholly in the insured's lane when the cars were about 100 feet apart. It continued: "When he was about 50 feet from me, I realized there might be a collision at which time I tried to dodge him by swerving my car to my left." The statement further asserted; "I don't think I am at fault for this accident . . . . "

Finally, on March 30, 1966 Nelson's deposition was taken by counsel for Isabelle in her tort action against her husband. On March 13, 1966, or almost 3 years after the accident, the insured for the first time since the accident visited the scene in Dover and paced off certain distances. On deposition, he testified that the other vehicle was 700 feet away when he first saw it, partially in his lane of travel, and two or three hundred feet west of Bellamy Road. He testified that he himself was then 250 feet from the point of collision; and that the other car came completely into his lane after it had gone perhaps 100 feet. He testified that when it was about 200 feet away, "I knew then that there would be a collision unless I changed my course. But at that time I must have froze at the wheel because I feel I had ample time to go to the right of him . . . onto the grass . . . . But when the car got to approximately a car's length of me I suddenly turned left . . . . "

At the trial of the petition for declaratory judgment, there was

evidence that Cheetham had entered Route 155 from Bellamy Road, and that the two vehicles collided at a point in the west-bound lane of travel, approximately 135 feet east of the easterly line of the intersection of Route 155 with Bellamy Road. It also appeared that the overpass was 770 feet east of the Bellamy Road intersection, and that a ramp leading to the Spaulding Turnpike branched off to the northwest approximately 370 feet from the Bellamy Road intersection. At the point of collision, Route 155 was 60 feet wide. This was some 20 feet wider than it was easterly of the point of collision, because access ramps to and from the Turnpike merged into both sides of Route 155 at points 25 and 40 feet east of where the collision occurred. It also appeared that there were grass plots on either side of Route 155, separated from the highway by low curbs over a distance of 200 feet easterly of where the access ramps joined it just east of the collision point.

The insured has consistently estimated his own speed at 25 to 30 miles an hour, and he estimated at the trial that the speed of the other car was 40 to 45 miles an hour. His testimony in other respects supported his testimony on deposition.

With one exception, the findings and rulings of the Trial Court were made by granting or denying requests submitted by the plaintiff and by the defendant Isabelle. The plaintiff's 26th request sought a ruling that the change in the insured's version of how the accident occurred "was material and substantial, and as such violated the terms of the contract . . . . " The Court made the following finding and ruling: "Concerning request number 26, the Court neither affirms or denies, but makes the following decree. The Court finds that there is evidence of collusion, or lack of cooperation by the petitionee. Court finds a failure to cooperate and the petitioner is not obligated to defend this action."

On the subject of collusion, the Court granted the defendant's requests for findings that there "is no evidence of any fraudulent conduct on the part of Mrs. Nelson" and no evidence of discussion of the suit between Nelson and his wife "except that he told her that he had no objection if she sought legal assistance." Although the Court denied a request for a finding that there was "no evidence of any fraudulent conduct on the part of Dr. Nelson," it also denied the plaintiff's request for a finding that "the motive involved in the change of the statements was to enable Mrs. Nelson to obtain additional compensation from [the plaintiff]."

Additionally, on the subject of fraud, the Court ruled that in order for the plaintiff to prevail in the petition for declaratory judgment, it must "prove that Dr. Nelson 'submitted to the [plaintiff] information and statements of fact that were knowingly incorrect' and that such conduct constituted a material breach of [plaintiff's] contract," and that "Dr. Nelson was guilty of conduct amounting to fraud."

In response to the plaintiff's requests, the Court found that the other car involved in the accident had entered Route 155 from Bellamy Road by turning right in an easterly direction. It ruled that the early statements given by the insured had indicated that he was "in no way to blame for the accident," while his testimony on deposition and in court "differed materially," and "might" warrant a jury in holding him partly to blame for the accident. However, the Court denied a request by the plaintiff as follows: "The sworn testimony of Dr. Nelson was such as to raise serious questions as to whether or not he was negligent under the emergency doctrine, and rules out any defense of the emergency doctrine."

The law is well settled that a cooperation clause of an insurance policy such as the one before us requires "a full, frank and fair disclosure of information in the possession of an insured." *Maryland Cas. Co.* v. *Coman*, 106 N. H. 364, 366. As a corollary to this principle, it is held that a "deliberate and wilful falsification of material facts by the insured constitutes a violation of the terms of a policy . . . [as] where the insured untruthfully or collusively assumes liability for the accident, or misrepresents the facts to the prejudice of the insurer." 14 Couch on Insurance (2d) *s.* 51:106, *p.* 603.

Where, as in this case, inconsistencies in statements by the insured are relied upon by the insurer to establish a breach of the policy, they must be material in nature, and found to be accounted for by wrongful intent on the part of the insured. *Medico* v. *Assurance Corp.*, 132 Me. 422. "Lack of good faith must be proved, and is not to be inferred . . . . " *Id.*, 427. "Where the inconsistency is due to imperfect memory or perception rather than bad faith, the insurer is in no poorer a position to defend than the assured would be himself; and no matter how difficult it makes the defense, the insurer is not relieved of liability. In the majority of cases, the assured's first account embodies facts

indicating due care and the second facts pointing to negligence. Even though the jury in the tort action reaches a verdict consistent with the second account, this does not preclude a finding in the action on the policy that the second account is not in accord with the assured's honest belief." Note, 68 Harv. Law Rev. 1436, 1440. See also, *Donaldson* v. *Farm Bureau Ins. Co.*, 339 Pa. 106; Annot 34 A.L.R. 2d 264.

In reviewing the action of the Trial Court herein, we must assume that the finding that there was "a failure to cooperate" rests upon the subsidiary finding that the "sworn testimony of Dr. Nelson" differed materially from his earlier unsworn statements. Whether the Trial Court also found that this material difference was submission of information which was "knowingly incorrect" and thus was "conduct amounting to fraud," so as to constitute a material breach of contract, is not clear to us from the record.

We consider that any issue of collusion between the insured and his wife may be laid to one side. While the Court found that there was "evidence of collusion, or lack of cooperation," it made no finding that collusion in fact took place. On the contrary, it expressly found that there "is no evidence of any fraudulent conduct on the part of Mrs. Nelson" and "no evidence of any communications between Dr. and Mrs. Nelson . . . that either would tell lies or withhold the truth . . . . " Thus we conclude that the reference to evidence of collusion "was not intended . . . to include a finding of fraud, which the word in its more common use connotes." *Maryland Cas. Co.* v. *Lamarre*, 83 N. H. 206, 208.

The Court did however proceed to find "a failure to cooperate," and ruled that the plaintiff is not obligated to defend the pending tort action. See *Glens Falls &c Co.* v. *Keliher*, 88 N. H. 253. In ordinary circumstances, this finding, and the ruling which followed it, would be held to imply the necessary subsidiary finding that the failure to cooperate was "conduct amounting to fraud," consisting of the submission of "statements of facts that were knowingly incorrect," since the Trial Court ruled that proof of such conduct was necessary if the plaintiff were to prevail.

Such findings might be warranted by the record, upon either of two hypotheses: ( 1 ) The insured deliberately lied in representing that he first saw the other car several hundred feet west of Bellamy Road, when in fact, as the Trial Court found, the car turned on

to Route 155 from Bellamy Road; or ( 2 ) The insured although honestly mistaken in believing that the other car was at all times on Route 155, deliberately exaggerated and misrepresented. the distance which separated the two vehicles when they first came in sight of each other. And that in either case, he did so in order to facilitate recovery by his wife.

While the first hypothesis is one which the parties have not discussed in this court, the defendant Isabelle considered it of sufficient moment to move to strike the testimony of the police officer upon which it necessarily rested. The second hypothesis the defendant Isabelle argues is without foundation.

On this issue we agree with the contentions stated in plaintiff's brief concerning the significance of the changes made in the insured's account of the accident. It may be granted that his estimates of speed and distances could not all be reconciled. If the collision occurred 135 feet from the intersection, Nelson could not have travelled 635 feet at 30 miles an hour, while Cheetham was going 460 feet at 40 miles an hour. *A fortiori,* if Cheetham was on Route 155 for a distance of only 135 feet, Nelson could not have been 635 feet from the point of collision when he first saw Cheetham on Route 155. Nevertheless, erroneous estimates of time and distance do not of themselves establish a breach of the condition of cooperation.

However, it is undisputed that the insured changed from 50 to 200 feet his estimate of the distances separating the vehicles at the time when he first appreciated the need for saving action on his part; and at the same time estimated that the other car was 700 feet away when he first saw it, rather than 400 feet distant as he first had stated. The significance of these changes is described thus by the plaintiff: "They establish that the Cheetham vehicle came fully into Nelson's lane of travel some 100 feet after Nelson first saw the car 700 feet away. Thus when the cars were 500 feet or more apart, and fully 5 to 7 seconds distant, they were in the same lane and Mr. Nelson believed that the Cheetham car was a threat to him . . . . When the cars were 300 or more feet, and 2 to 3 seconds apart, Mr. Nelson knew there was going to be a collision and knew he could avoid it by turning to his right. Thus an entirely different legal doctrine comes into play . . . . Mr. Nelson's new version . . . reveals that. he had the *last clear chance* to avoid the accident . . . .

*Mack* v. *Hoyt,* 94 N. H. 492." The change in the account of what occurred the Trial Court found to be a material change, from which a jury might be warranted in finding the insured partly to blame for the collision, while on a basis of earlier accounts it could not so find.

We think that this conclusion is supportable upon the record. The parties are in agreement that on the evidence the two vehicles must be taken to have been approaching each other at a combined speed of about 100 feet per second. See *Couture* v. *Lewis,* 105 N. H. 224. If the vehicles were only 200 feet apart when the insured appreciated that Cheetham was not going to turn back to the other lane, the time for saving action was only two seconds. Similarly, if a jury found that Nelson should have appreciated the need for action earlier, when the other car came wholly into the wrong lane and was 300 feet distant, as Nelson testified at one point, the time remaining would have been only three seconds. The decided cases establish that under such circumstances, he would be entitled to the benefit of the emergency doctrine, provided the emergency were found not to have been occasioned by his own negligence. *Kardasinski* v. *Koford,* 88 N. H. 444; *Bonenfant* v. *Hamel,* 96 N. H. 228, 230. See also, *Gaudette* v. *McLaughlin,* 88 N. H. 368, 373.

But as the plaintiff points out, a jury might also find upon the insured's testimony that the other car was wholly in the wrong lane of travel when it was 500 feet away. It could likewise find, from his testimony that "the car kept approaching . . . so I didn't know whether the driver was asleep or intoxicated or what," that Nelson was negligent in failing to take some saving action during the five seconds which then remained. Hence on the facts thus stated, a jury might properly find that because of the time that was available Nelson had an opportunity to avoid the accident by applying his brakes, sounding his horn, and turning to his right, none of which he did.

The finding that there was a material change in the account of the accident was therefore warranted. However, the propriety of implying findings by the Trial Court that such a change was "conduct amounting to fraud" and a submission of "knowingly incorrect" facts, is placed in doubt by the Court's denial of the plaintiff's request for a finding that "the motive involved . . . was to enable Mrs. Nelson to obtain additional compensation from

[the plaintiff]." ( Req. 24 )

If the account of the accident was changed in good faith, prompted as Nelson claimed by his visit to the scene of the accident and realization that his original estimates of distance were erroneous, a finding of breach of the policy would not be warranted. *Guerin* v. *Indemnity Ins. Co.,* 107 Conn. 649. Denial of the plaintiff's 24th request prevents implication of a finding of fraudulent conduct, which otherwise would inhere in the decree relieving the plaintiff of its obligations under the policy. In these circumstances, the case must be remanded to the Trial Court for resolution of the apparently inconsistent findings and rulings, by means of express findings upon the issue of fraud or good faith.

Conceivably, upon remand, the burden of proof may become material. While under our established rule the burden of establishing coverage in declaratory judgment proceedings is upon the insured ( *Standard Accident Ins. Co.* v. *Gore,* 99 N. H. 277, 280; *Travellers Ins. Co.* v. *Greenough,* 88 N. H. 391 ), by the great weight of authority an insurer is considered to have the burden of establishing its affirmative defense of breach of the cooperation clause of a policy. 14 Couch on Insurance ( 2d ) *s.* 51:188; Annots. 139 A.L.R. 771, 98 A.L.R. 1465; 72 A.L.R. 1446. See also, 7 Am. Jur. 2d 509, 510. We hold that the plaintiff has this burden in this action.

*Remanded.*

GRIFFITH, J., did not sit; the others concurred.