**Earlene FELLOWS**

v.

**William A. MAUSER, Jr. and Hartford Accident and Indemnity Company.**

Civ. A. No. 5424.

United States District Court
D. Vermont.

July 18, 1969.

Anthony F. Abatiell, Abatiell & Abatiell, Rutland, Vt., for plaintiff.

James J. McNamara, McNamara, Fitzpatrick & Sylvester, Burlington, Vt., for defendant, William A. Mauser, Jr.

James T. Haugh, Ryan, Smith & Carbine, Rutland, Vt., for defendant, Hartford Accident and Indemnity Co.

## OPINION

LEDDY, District Judge.

This suit has been brought by the plaintiff, Earlene Fellows, to collect a judgment of fifteen thousand (15,000) dollars rendered by this Court on June 7, 1968, against William A. Mauser, Jr., a defendant in this action. In addition to William A. Mauser, Jr., the plaintiff has brought this action against Hartford Accident and Indemnity Company alleging that it had issued an automobile liability policy to William A. Mauser, Jr. and that this policy covered the motor vehicle accident upon which the June 7, 1968, judgment was based. The plaintiff goes on to allege that the insurance company defended the original suit thereby waiving any defenses against William A. Mauser, Jr. and that, as a result, it is obligated to pay plaintiff's judgment. Finally, plaintiff alleges that the refusal of the defendant, Hartford, to pay was malicious and that plaintiff is entitled to punitive damages and attorney fees.

Defendant, William A. Mauser, Jr., has filed a cross-claim against Hartford asking that the rights and duties between them relative to the judgment be adjudicated. Hartford has denied its obligation to Mauser and to the plaintiff on the ground that Mauser failed to cooperate with them in preparing his defense in the original case.

On April 11, 1964, Hartford issued an insurance contract to Mauser. This contract covered, among other vehicles, a 1963 Cadillac convertible owned by Mauser. Condition 12 of this policy defines Mauser's duty to cooperate with Hartford:

> The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.

On March 13, 1965, Mauser was operating his 1963 Cadillac in Manchester, Vermont. The plaintiff, Earlene Fellows, was a passenger in this vehicle. At approximately 7:00 P.M., an accident occurred in which both Mauser and the plaintiff were injured.

Mauser suffered severe head injuries in the accident and was taken, unconscious, to a hospital in Bennington, Vermont. After receiving emergency treatment, he was transferred to the Hartford Hospital, Hartford, Connecticut. On March 19, 1965, an agent of Hartford interviewed Mauser at the Hartford Hospital. The agent took a statement in which Mauser gave his version of the accident. This statement is in the handwriting of the agent but is signed by Mauser. Mauser has no present memory of giving this statement.

The statement indicates that on March 13th, at about 7:30 P.M., Mauser was driving *alone* in Manchester, Vermont, and that his purpose in being in Vermont was to look at real estate. The statement also indicates that Mauser was then blinded by the lights of an oncoming car and that, as a result, his

automobile went off the road and collided with some unknown structure. Finally, it states that Mauser sustained very serious injuries and was hospitalized.

Subsequent to receiving Mauser's statement, Hartford obtained a copy of the police accident report. This report stated that Mauser was not alone, that the plaintiff was a passenger in his automobile. Agents of Hartford interviewed the plaintiff and found that she had suffered serious injuries as a result of the accident and that she intended to make a claim against Mauser. She stated that the accident occurred because Mauser was driving at an excessive speed. She also informed Hartford that Mauser's brother-in-law had advised the hospital in which she stayed that he would pay her bills.

On June 22, 1965, Mauser was again interviewed by an agent of Hartford. The statement given at that time is also in the handwriting of the agent and is signed by Mauser. It indicates that the plaintiff was a passenger in his automobile at the time of the accident. It states that Mauser and the plaintiff had stopped and had three beers prior to the accident. It also states that at the time of the accident, Mauser was going 45 miles per hour and that he hit a stonewall when the lights of an oncoming car blinded him. Finally, it includes a statement that Mauser did not assume any liability for the plaintiff's medical bills.

On July 2, 1965, George Callas, a Hartford claims manager made a memorandum relative to Mauser's claim. The memo indicates that in view of the fact that Mauser stated he had no passengers and that this statement was false, Mauser's claim should be handled under a reservation of rights letter. According to the memo, the reason that Callas would give to Mauser for the reservation would be the misstatement about the presence of a passenger. However, the memo also indicates that Hartford was more worried about a possible admission of liability by Mauser:

> We would also include in our reservation of rights letter "for other good and sufficient reasons" thereby if worst came to worst, and the matter went into suit and it did come out that there was an admission of liability in breach of the policy contract, that we could possibly disclaim at that time.

On July 2, 1965, Callas sent to Mauser the reservation of rights letter.[1] The

1. Dear Mr. Mauser;

On March 15, 1965 this office received a notice of loss wherein we were advised that on March 13, 1965 whle you were operating your 1963 Cadillac on Route #7, Manchester, Vermont said vehicle left the travelled portion of the highway and overturned causing injury to yourself. In a signed statement dated March 19, 1965, you advised us you were alone when the accident occurred. As our investigation progressed we learned that when this accident occurred you had as a passenger in your vehicle one Earlene Fellows, who also was injured. Our file further reflects that either you or someone in your behalf made commitments to Putnam Memorial Hospital re: hospital bills incurred by Earlene Fellows.

We call your attention to the conditions section paragraph 12 indemnity policy # 02 C 312562, wherein it states;

Assistance and Cooperation of the Insured: The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.

In view of this non-compliance of a policy contract condition and for other good and sufficient reasons, and in view of the breach thereof, this is to notify you that this case is being handled under a full reservation of any rights, which have accrued or may accrue, under this policy contract. In view of the claim made against you, an investigation is being

letter first outlined the facts set out above. The letter informed Mauser that he had a duty to cooperate under the insurance policy and that, in the opinion of the company, he had not complied with this duty. The letter concluded by stating that because of the breach and "for other good and sufficient reasons," the plaintiff's claim against Mauser was being handled under "a full reservation of any rights, which may have accrued or may accrue, under this policy contract."

Mauser never agreed to allow Hartford to defend under a reservation of rights. In fact, Mauser called Callas for an explanation of the letter and, as a result of that conversation, felt that the claim was all taken care of. The gist of Callas's representations to Mauser in that conversation was that Hartford would pay all of the plaintiff's medical bills and a few dollars more and obtain a release.

Hartford was unable to settle the claim and the plaintiff brought an action against Mauser in this Court. The case came up for trial on June 5, 1968. At about 9:15 A.M. on that day, Mauser met with Attorney Edward John who had been employed by Hartford to defend the case. At that time, Mauser explained to John that he could not say that he had an independent recollection of any of the facts surrounding the accident and that he confused what might be his own recollection with what others had told him. During the trial, Mauser testified to that effect. The plaintiff testified that the accident occurred because of the excessive speed of Mauser. On June 6, 1968, the jury returned a verdict in favor of the plaintiff for fifteen thousand (15,000) dollars.

During the course of trial, Attorney John reminded Mauser that the defense was being conducted under a full reservation of rights. He did not inform the plaintiff of this fact. After the verdict was returned, however, he sent a letter to the attorney for the plaintiff informing him of the reservation of rights and stating that because of the failure of Mauser to cooperate, Hartford was disclaiming any obligation to pay the judgment. Subsequently, Attorney John sent a similar letter to Mauser. Up to this time, the judgment has not been paid.

■ At the outset, this case presents a choice of law problem. In deciding which state's insurance law to follow in this case, this Court is bound by the Vermont choice of law rules. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Mundry v. Great Am. Ins. Co., 369 F.2d 678 (2d Cir. 1966). The Vermont rule is that the law of the place of the making of the insurance contract governs its validity, its interpretation and its construction. Vermont Mut. Fire Ins. Co. v. Van Dyke, 105 Vt. 257, 165 A. 906 (1933). In this case, there is no direct evidence of the place of the making of the insurance contract between Mauser and Hartford. However, the evidence does show that Mauser is a resident of Connecticut and that Hartford has its principal place of business in Connecticut. From these facts, it can be inferred that the contract was made in Connecticut and, therefore, that Connecticut law governs the issues in this case.[2]

made by us upon the condition, however, that it shall in no way at all prejudice the position above outlined, and subject further to the fact that any actions taken in the future on your behalf in connection with this case, shall also be without prejudice to such position. Thus, in so doing, we do not waive any rights, which we have had or may have to deny liability to you or to anyone concerned upon the grounds herein indicated or upon other grounds which may hereafter develop,

and that we reserve the right at some future date to disclaim coverage.
Very Truly Yours,
s/ George N. Callas
George N. Callas

2. There is actually no conflict of laws problem in this case. If Vermont law were applicable, it is clear that any breach of the duty to cooperate on the part of Mauser would be waived by Hartford because it defended the plaintiff's

There are two distinct issues presented by the facts set out above: (1) whether Mauser breached his duty to cooperate with Hartford in defense of the plaintiff's claim (2) whether Hartford by defending the plaintiff's original suit has waived any defense of failure to cooperate. Although it is this Court's conclusion that either of these issues are dispositive of this case, both will be treated.

■ Under section 12 of the conditions of the policy between Mauser and Hartford, Mauser, as the insured, has the general duty to cooperate in defense of claims against him. Under Connecticut law, the duty to cooperate includes the duty to disclose information surrounding a claim and the collateral duty not to give intentionally false information. Guerin v. Indem. Ins. Co., 107 Conn. 649, 142 A. 268 (1928); See also Car and Gen. Ins. Corp. v. Goldstein, 179 F.Supp. 888 (S.D.N.Y.1959), aff'd 277 F.2d 162 (1960). The duty not to give false information may be breached only if an incorrect statement is made deliberately with the intent to deceive the insurer. Rochon v. Preferred Accident Ins. Co., 114 Conn. 313, 158 A. 815 (1932); Employers Mut. Cas. Co. v. Nelson, 109 N.H. 6, 241 A.2d 207 (1968). In addition, before there can be a breach of the duty to cooperate, the failure on the part of the insured must be material or substantial. Curran v. Connecticut Indem. Co., 127 Conn. 692, 20 A.2d 87 (1941). The presence or absence of prejudice to the insurer is normally determinative of whether a substantial failure has occurred. See Curran v. Connecticut Indem. Co., *supra*; Farm Bureau Mut. Auto Ins. Co. v. Bascom, 287 F.2d 73 (2d Cir. 1961).

■ In this case, the burden is on Mauser and the plaintiff to show that Mauser has complied with his duty to cooperate. See Preferred Accident Ins. Co. v. Grasso, 186 F.2d 987 (2d Cir. 1951). A review of the facts in accordance with the law relating to the duty to cooperate convinces me that the plaintiff and Mauser have fulfilled their burden of proof.

Hartford alleges that two separate occurrences [3] constituted breaches of Mauser's duty to cooperate: (1) Mauser's original statement that he had no passengers at the time of the accident (2) Mauser's conflicting statements about his memory of the accident and the events surrounding it. It is clear that Mauser's statement on the first occasion was erroneous. It does not appear, however, that the misstatement was made with the intent to deceive. At the time the statement was taken, Mauser was hospitalized with severe head injuries. He doesn't remember ever giving the statement. Therefore, it is more probable that the misstatement was the product of a confused mental state than an intention to deceive.

■ In any event, it is clear that the effect of the misstatement on the defense of Mauser's claim by Hartford is insubstantial. Certainly, no prejudice resulted to Hartford from Mauser's statement that he was alone since shortly after receiving the statement, Hartford learned from a police report that the plaintiff was a passenger. Moreover, when next asked about the accident, Mauser corrected his misstatement and admitted that the plaintiff was a passenger at the time of the accident. See 14 G. Couch, Insurance § 51.108 (2d ed. 1965) and cases cited therein.

action against Mauser. The unilateral reservation of rights given by Hartford to Mauser has no effect in Vermont. See Beatty v. Employers' Liability Assurance Corp., 106 Vt. 25, 168 A. 919 (1933).

3. Hartford was also worried about the plaintiff's statement that Mauser's brother-in-law had obligated himself to pay the plaintiff's medical bills. The evidence does not show that any such obligation existed. Since the plaintiff was compensated for these bills at her original trial, it would appear that there was no obligation. Thus, the medical bills are not an issue in this case.

This leaves only the alleged conflicting statements. Mauser originally told the agent of Hartford that at the time of the accident, he was proceeding at 45 miles per hour and that he left the road because he was blinded by the lights of an oncoming automobile. At trial, Mauser testified that he had no independent recollection of the facts of the accident. He stated that he couldn't remember whether other people had told him about the accident and the events surrounding it or, in fact, how he came to know about how the accident occurred. For such a variance of statements to constitute a breach of the duty of cooperation, at least one of the inconsistent statements must be false and must have been made deliberately with the intent to deceive the insurer. Guerin v. Indem. Ins. Co., 107 Conn. 649, 142 A. 268 (1928). See also Ocean Accident & Guar. Corp. v. Lucas, 74 F.2d 115, 98 A.L.R. 1461 (6th Cir. 1934); Employers Mut. Cas. Co. v. Nelson, 109 N.H. 6, 241 A.2d 207 (1968).

The evidence is more consistent with the conclusion that Mauser was confused about the facts surrounding the accident and his ability to remember those facts than with the conclusion that he deliberately lied either to the agent of Hartford or in court. It is undisputed that Mauser suffered severe head injuries in the accident and that, as a result, he was unconscious after the accident. It is also undisputed that Mauser was hospitalized and received treatment for these injuries. In view of these facts, I find Mauser's statement that he does not have a clear recollection of the accident and his days in the hospital to be reasonable. It is also reasonable to conclude that as a result of his hazy memory, Mauser did confuse his own recollection with stories that he heard from others. Thus, I accept as true Mauser's statement that he could not at trial and cannot now say with any certainty how the accident occurred.

The statement made by Mauser on June 22, 1965, includes a full description of the facts of the accident. Mauser does not now take the position that he did not make this statement or that this statement is untrue. There is no indication that he was asked at the time if the facts came from his own independent recollection of the accident, nor does the statement written by the agent of Hartford show that the facts related therein come from Mauser's independent recollection. My conclusion is that on June 22, 1965, Mauser simply stated the facts as he believed them to be without regard to whether he had an independent recollection of these facts or he was told them by others. Thus, there is no real inconsistency between the June 22 statement and Mauser's trial testimony. I cannot find that Mauser deliberately lied to the agent of Hartford with the intent to deceive him as to the facts of the accident.

Even if there were a breach of the duty of cooperation, that breach will be deemed waived if the insurer goes on and defends the claim against the insured. See Basta v. United States Fidelity & Guar. Co., 107 Conn. 446, 140 A. 816 (1928). The insurer can avoid this result by discontinuing his defense of the claim or by securing an agreement that its continuation of the defense will not operate as a waiver. See generally Annot., 70 A.L.R.2d 1197 (1960). In Connecticut, the insurer may also avoid a waiver by making a statement to the insured that continuation of its defense is under a reservation of all rights to refuse to pay any judgment because of the insured's breach of duty. Such a reservation of rights statement is effective even if the insured does not agree to it. Basta v. United States Fidelity & Guar. Co., *supra*. Connecticut law, however, does condition the effectiveness of a reservation of rights statement on the insurer's conduct following the reservation statement. In *Basta*, the Court noted that a reservation of rights is effective only if the insurer has "performed no acts which were inconsistent with such reservation." See also Shelby Mut.

**936**

Cas. Co. v. Richmond, 185 F.2d 803 (2d Cir. 1950). Connecticut law also recognizes that since the insurer's decision to disclaim liability on a claim may have more of an impact on the plaintiff than on the insured, prejudice to the plaintiff is a relevant inquiry in determining the effect of a reservation of rights. Mundry v. Great Am. Ins. Co., 369 F.2d 678 (2d Cir. 1966).

The reservation of rights letter sent to Mauser is a very limited document. It begins by reciting the alleged factual basis for the reservation. It states that Mauser wrongly told Hartford that he had no passenger and that Mauser or someone acting in his behalf had agreed to pay the plaintiff's hospital bill. The letter then quotes the cooperation clause of the policy and states that the facts set out constitute a breach of that clause.

At this point the letter begins to outline Hartford's position: Because of the breach "and other good and sufficient reasons" Hartford is reserving all its rights under the insurance contract. Hartford will conduct an investigation of the claim but this investigation will not be a waiver of its right *to deny coverage* because of the breaches that have occurred or that might occur in the future.

It is Hartford's position that this is a general reservation of rights letter but I cannot give it that construction. Certainly Mauser, as a layman, would not infer that from the letter. The letter does not suggest that Hartford would defend Mauser's claim in court or negotiate with the plaintiff. It states that Hartford will *investigate* the claim but that this investigation will not stop Hartford from disclaiming coverage. Presumably, after the investigation, Hartford would decide whether to defend or disclaim based on what its investigation disclosed and would notify Mauser of its decision.

The unexplained references to "other good and sufficient reasons" and further breaches support this interpretation.

These references may be to the possible admission of liability that Callas spoke of in his memorandum of July 2, 1965. In any event, the references make it appear that Hartford has not decided what to do and is hedging its position. The Callas memorandum states exactly that.

In view of the limited effect that must be given to the reservation of rights letter, there is no doubt that subsequent statements made by Callas on behalf of Hartford are inconsistent with Hartford's position in the letter. Callas told Mauser that he need not worry since Hartford planned to pay the plaintiff's medical bills and give her a little for herself to obtain a release. When this statement is put in context with the letter, it is clear that Hartford had gone beyond the investigatory stage and was admitting its obligation to Mauser to pay the claim against him. Mauser's resulting conclusion that the dispute between him and the insurance company was settled is reasonable on the basis of Callas's statements. This conclusion was justifiably reinforced by the fact that Mauser heard nothing more from Hartford until the day before trial. I hold that since the statements of Callas were inconsistent with the reservation of rights letter, the letter cannot be given the effect that the defendant claims.

There is some evidence that Attorney John who defended Mauser at trial informed him that Hartford was reserving its right to refuse to pay any judgment because of Mauser's failure to cooperate. This statement was made sometime during the course of trial. I cannot give this statement any effect because it came much too late. Mauser was not given the opportunity to obtain separate counsel nor was he asked to contribute some money toward the settlement although he was apparently willing to do so.

I also find that the reservation of rights cannot be given effect for another reason. The evidence showed that the plaintiff was not informed that Hartford had taken the position that it

was reserving the right to refuse to pay a judgment until after the trial. In fact, Hartford did not inform the plaintiff that it would not pay her judgment until some three months after the judgment was rendered. As stated above, Mundry v. Great Am. Ins. Co., supra, holds that under Connecticut law the court should determine to what extent the plaintiff will be prejudiced in deciding whether to give effect to a reservation of rights. The prejudice referred to in *Mundry* relates to the fact that an insurance company by defending a suit "[holds] itself out to the injured party as willing to pay the judgment." Shelby Mut. Cas. Co. v. Richmond, 185 F.2d 803, 806 (2d Cir. 1950). Thus, if a plaintiff brings suit against a judgment proof motor vehicle operator and goes to trial on that suit relying on the fact that an insurance company has taken over the defense, the plaintiff would be severely prejudiced if he learned after trial that there was a reservation of rights and the insurer will not pay the judgment.

The situation present here is very close to the example given. Although Hartford decided to act under a reservation of rights in July, 1965, it never informed the plaintiff of this decision until after trial some three years later. If the plaintiff knew of the reservation of rights, she might not have been willing to bear the expense of suit. Certainly, she would have had a chance to investigate Mauser's financial condition. Moreover, knowledge of the reservation of rights would have had a major effect on the plaintiff's position in settlement negotiations. On the facts present in this case, I conclude that Hartford's failure to inform the plaintiff of its reservation of rights prejudiced the plaintiff to such a degree that the reservation, if any, cannot be given effect.

On the basis of the foregoing discussion, I find for the plaintiff and for Mauser on his cross-claim against Hartford. Both the plaintiff and Mauser have asked that any recovery they might obtain in this suit include attorney's fees and punitive damages. In Vermont, attorney's fees are not compensable unless there is specific statutory authorization. Loeb v. Loeb, 120 Vt. 489, 144 A.2d 825 (1958). There is no authorization for attorney's fees in this case. McGettrick v. Fidelity & Cas. Co., 264 F.2d 883 (2d Cir. 1959). In order to allow plaintiff and Mauser punitive damages in this case, I must find that Hartford acted maliciously in its refusal to pay the plaintiff's judgment. See Walsh v. Segale, 70 F.2d 698 (2d Cir. 1934). The evidence in this case shows no indication of malice on the part of Hartford. Therefore, punitive damages will not be allowed.