## AIME GUERIN *vs.* THE INDEMNITY INSURANCE COMPANY OF NORTH AMERICA.

Third Judicial District, New Haven, January Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, BANKS and ELLS, Js.

Chapter 331 of the Public Acts of 1919 provides that every company issuing a policy of insurance against loss by reason of liability for accidental bodily injury, death, or damage to property, "shall whenever a loss occurs under said policy, become absolutely liable, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him"; that no such policy shall be cancelled or annuled by agreement between the company and the assured after the latter has become responsible for any loss; and that any person recovering a judgment for such loss against the assured shall be subrogated to his rights under the policy if the judgment is not satisfied within thirty days after it is rendered. *Held:*

1. That the chief purpose of this statute was to mitigate the harshness of the rule, theretofore applied to insurance contracts of this nature, that actual payment of the judgment against the assured was a condition precedent to recovery under the policy.
2. That except for the provisions expressly protecting the judgment creditor against a cancellation or annulment of the policy, the statute was not intended to give him any greater rights thereunder than those possessed by the assured, nor to deprive the company of any defenses as against him which would ordinarily be open to it in an action by the assured.
3. That a breach by the assured of his covenant in the policy to render the company "all co-operation and assistance in his power" would preclude a recovery by the judgment creditor; but that the conduct of the assured in the present case in furnishing an incorrect, though not intentionally false, statement to the company at the time of the accident which tended to absolve him from blame, whereas his testimony upon the trial was in substantial conflict therewith and was virtually a confession of negligence on his part, was not a breach of such a covenant.

Argued January 26th—decided June 5th, 1928.

ACTION to recover the amount of a judgment obtained by the plaintiff against a third party, to whom the defendant had issued a policy of insurance

indemnifying him against liability arising out of the operation of his automobile, brought to the Superior Court in New Haven County and tried to the court, *Nickerson, J.;* judgment for the plaintiff, and appeal by the defendant. *No error.*

*James W. Carpenter,* with whom, on the brief, was *Jeremiah H. Bartholomew, Jr.,* for the appellant (defendant).

*Clayton L. Klein,* with whom was *Edward F. Sweeney* and, on the brief, *Frederick M. Peasley,* for the appellee (plaintiff).

BANKS, J. The plaintiff recovered a judgment against one LeClerc for personal injuries caused by the latter's negligence in the operation of an automobile. At the time the injuries were received LeClerc was insured by the defendant against loss from liability imposed by law for such injuries. This action is brought under Chapter 331 of the Public Acts of 1919, by which, if the defendant in an action to recover for such injuries is insured against loss from such liability, the judgment creditor is subrogated to the rights of the assured against his insurer.

One of the conditions of the policy written by the defendant was that the insured therein "shall at all times render to the company all coöperation and assistance in his power." The defendant in its special defense alleged a breach by LeClerc of this condition of the policy in that he signed and delivered to the defendant's agent a few days after the accident a statement which tended to free him from responsibility for the accident, but upon the trial of the action testified in substance that plaintiff's injuries were caused by his (LeClerc's) negligence.

Corrections in the finding are sought for the purpose of showing that LeClerc's signed statement contains the substance of what he stated to defendant's agent. The corrections if made would be immaterial, since the signed statement is made a part of the finding and the court found that he gave the statement to the defendant's agent, and that the testimony given by him on the trial conflicted with and was different from the statement. Nor is any correction necessary in the statement of the appellant's claims of law, since those made sufficiently present the only questions in the case which are, (1) did the defendant's liability under the policy and the statute become fixed as of the time of the accident, (2) if not, did LeClerc breach the condition of the policy that he would "render to the company all coöperation and assistance in his power" by first making a statement to the defendant's agent and thereafter repudiating it and giving evidence upon the trial which conflicted with it?

Chapter 331 of the Public Acts of 1919 provides that every insurance company which shall issue a policy insuring against loss by reason of liability for bodily injury or death by accident, or damage to property "shall, whenever a loss occurs under said policy, become absolutely liable, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by said casualty." It further provides that no such policy shall be canceled or annulled by any agreement between the company and the assured after the latter has become responsible for any such loss, and that a judgment creditor in an action against the assured for such loss or damage shall be subrogated to the rights of the assured under the policy if the judgment is not satisfied within thirty days after it is rendered. The trial court reached the

conclusion that the statute fixed the liability of the defendant as of the time of the accident, and that it was not subject to be defeated by any subsequent action of the assured. This construction of the statute involved a misconception of its true purpose and effect. Prior to the enactment of this statute the usual policy of automobile liability insurance contained a provision that the insurer should be liable only in cases where the assured had actually paid a judgment obtained against him, and we held that such a policy was one of indemnity against loss, not against liability, and that payment of the judgment was a condition precedent to recovery; *Shea* v. *United States Fidelity & Guaranty Co.,* 98 Conn. 447, 120 Atl. 286, and said (p. 453): "The unfairness to the assured of contracts of insurance with conditions such as appear in this policy before us, led the General Assembly, in the Public Acts of 1919, Chapter 331, to make the insurer liable to the insured whenever liability for a loss occurs without the payment of the final judgment against him by the insured before he can recover on his policy." In the *Shea* case the assured, during the time that the action was pending against him, was adjudged a bankrupt, with the result that the judgment recovered against him was not paid, the insurance company was not liable under its policy and the judgment was worthless. The present statute was enacted to remedy the injustice inherent in such a situation. An obvious purpose of the Act is to give the person injured a beneficial interest in the proceeds of the policy so that he shall not be prevented, because of the financial irresponsibility of the assured, from realizing upon the judgment he has obtained against him. The provision that the company "shall, whenever a loss occurs under said policy, become absolutely liable," must be read in connection with the other pro-

visions of the Act. The immediate context indicates that the company is to be held absolutely liable for the loss in the sense that the payment of the same "shall not depend upon the satisfaction by the assured of a final judgment against him." The "loss" for which the company is to become absolutely liable is a loss "under said policy," that is, such a loss as it would be bound to pay the assured provided all the terms and conditions of the policy are complied with, the effect of the Act being, however, to prevent the insertion in the policy of a clause making payment conditional upon satisfaction by the assured of the judgment against him. The intention of the Act is to give the injured person the same rights under the policy as the assured, and to prevent his being deprived of those rights by a cancellation of the policy after the assured's liability to him has accrued. The Act does not, however, give the injured person any greater rights under the policy than the assured himself has and does not, for his benefit, deprive the company of any defenses ordinarily open to an insurer in an action by the assured. This is the construction which has been placed upon similar statutes by the courts of Massachusetts and Ohio. *Lorando* v. *Gethro,* 228 Mass. 181, 117 N.E. 185, 1 A.L.R. 1374; *Stacey* v. *Fidelity & Casualty Co.,* 114 Ohio St. 633, 151 N.E. 718. See also *Schoenfeld* v. *New Jersey Fidelity & Plate Glass Ins. Co.,* 197 N. Y. Supp. 606.

The trial judge states in his memorandum of decision that "no act of LeClerc or the defendant company, and no agreement between them after the injury can cancel or annul the contract of insurance." The statute, to effectuate its manifest purpose to safeguard the rights of the injured person, prohibits any cancellation or annulment of the policy by any agreement between the insurance company and the assured after

the injury.  A failure of the assured to comply with any of the terms of the policy, which compliance is under the policy a condition precedent to his recovery, does not constitute such an annulment or cancellation by agreement with the insurance company as to come within the prohibition of the statute.  As we have said, the statute gives the injured person the same rights as the assured under the policy but no greater rights, and does not, for the benefit of the injured person, deprive the company of any defenses which it may have under the policy, save only the one specifically mentioned in the statute.  If, therefore, the assured, LeClerc, breached the condition of the policy requiring him to render to the defendant "all co-operation and assistance in his power" there can be no recovery under the policy.

It remains to be considered whether there was such a breach of this condition of the policy by the assured. The duty resting upon the assured under this clause of the policy was to render to the defendant coöperation and assistance, presumably assistance in establishing any defense which it might have to an action upon the policy.  He signed the statement, Exhibit 1, giving a version of the facts which tended to exonerate him from blame for the accident.  It could hardly be said that this constituted any failure in coöperation with the defendant, but rather the reverse.  Later, upon the trial, he gave another version of the facts which was substantially different from and conflicted with his previous statement, and which was practically a confession that the accident was the result of his negligence.  It is not alleged or claimed that LeClerc testified falsely upon the trial; indeed it seems to be assumed by the parties and the court, though the finding does not cover that point, that the version of how the accident happened given by him upon the trial

was the correct one. It cannot be said, therefore, that there was a failure of coöperation and assistance by reason of truthful testimony given by LeClerc upon the trial. A failure to report the accident or to give notice of the suit or to give any information regarding the accident, might constitute a breach of this covenant. So if LeClerc in his statement or his testimony had untruthfully assumed liability for the accident that would have been, to say the least, a failure to coöperate and assist. But, as we have said, the giving of a statement, which though incorrect, gave a version of the accident which tended to free the assured of any charge of negligence and therefore to relieve the company of liability to the person injured, cannot be said to constitute a failure to render the coöperation and assistance required of the assured in this clause of the policy. It has been held that a failure to coöperate, within the terms of such a provision in a liability policy, is not shown by the fact that the assured gave testimony at an inquest that differed from his testimony at the trial in the absence of anything to show that he wilfully testified falsely. *Taxicab Motor Co.* v. *Pacific Coast Casualty Co.,* 73 Wash. 631, 132 Pac. 393. It is not found that there was any failure to furnish information to the defendant nor that the information furnished was intentionally false. Upon this record it cannot be said that the court erred in reaching the conclusion that there was no breach of this condition of the policy.

There is no error.

In this opinion the other judges concurred.