## YORKSHIRE INDEMNITY CO v ROHRKEMPER

Ohio Appeals, 1st Dist, Butler Co

No 636. Decided March 9, 1935

Vorys, Sater, Seymour & Pease, Columbus, and John D. Andrews, Hamilton, for plaintiff in error.

Harry J. Koehler, Jr., Hamilton, for defendant in error.

* * *

## OPINION

By MATTHEWS, J.

It was alleged in the defendant's third amended answer, in addition to a general denial, that George Renners, Jr., was operating the automobile at the time without the consent of Aloysius Renners, but the evidence abundantly proves that he had the consent or permission of Aloysius Renners.

The defendant also alleged that Aloysius Renners did not own the automobile and that his representation that he did was false and that thereby the policy was avoided. This defense seems to have rested chiefly on the fact that the bill of sale had not been filed. There was no contradiction of the evidence that Aloysius Renners bought, paid for, and took possession of the automobile, and received a bill of sale for it. That was more than the law required to transfer title to him. **Credit Co. v Schreyer, 120 Oh St, 568.**

The defendant further alleged that it had been released from liability because the assured violated that provision of the policy requiring him to render assistance and cooperation in securing information and evidence, and attendance of witnesses in connection with the claims and actions growing out of this collision. That is the ground of reversal most strongly urged in this court. The evidence on this subject is very conflicting and we will analyze it only to the extent necessary to show the basis of our conclusion.

There is a recital in the "notice of Accident," which purports to have been signed by Aloysius Renners, that a child dashed out from the curb in front of the automobile, and that the driver swerved to avoid hitting the child, and as a result skidded against a pole, but it is manifest that the insurer understood that the statement, if made, was based on hearsay. In the same statement, dated the day after the accident, it is stated that he had been unable to get a statement from the driver because of his injuries in the accident. There is no doubt that the driver had been injured and was in the hospital at the time. But in the proof of loss sworn to a month later the same explanation of the circumstances of the accident was given. This proof was prepared by the defendant's agent and signed by Aloysius Renners for the purpose of presenting his claim for property damage resulting from the collision, which

was in no way contingent upon lack of negligence. There could have been no motive based on hope of financial gain to himself to wilfully falsify in this respect, and the whole evidence does not lead us to the conclusion that such was his state of mind. Rather, we conclude that it was simply the repetition of the information given him immediately after the accident, which he had no reason to disbelieve.

George Renners, Jr., who was driving the automobile, signed a statement that three children darted into the street and that in attempting to avoid them he swerved the automobile causing it to skid and strike the pole. There is quite a contradiction in the evidence, on the subject of the circumstances surrounding the preparation and signing of the statement. It is in typewriting and was prepared in the office of the defendant's local attorneys after consultation with George Renners, Jr., shortly after he left the hospital where he was taken to be treated for his injuries received in this accident. He testified that the attorney (who was neither of the attorneys appearing in this court) prepared the statement apparently as a part of a plan to effect a compromise and that he signed it thinking he was co-operating with the insurance company in so doing.

A statement purporting to be signed by the plaintiff was introduced. The plaintiff denied signing it and denied making any statement that there were children in the street.

On the other hand, the defendant's attorney, who obtained Renners, Jr.'s statement, contradicts him in all substantial respects. The defendant's agent who interviewed the plaintiff testified that he stated that there were children in the street and that Renners, Jr., swerved to avoid them, and that the plaintiff signed the written statement to that effect.

With reference to these matters, neither side was strengthened in any substantial respect by corroborative evidence.

There was submitted to the jury this special interrogatory:

"Did Aloysius Renners and/or George Renners, Jr., at all times render to the Yorkshire Indemnity Co. all co-operation and assistance in their power with regard to ascertaining the facts of the accident of October 14th., 1932?"

The jury answered this interrogatory in the affirmative.

The plaintiff in error claims the verdict and the answer to this interrogatory are manifestly against the weight of the evi-

dence. So far as Aloysius Renners is concerned, we think we are justified in saying without extended discussion that there is only slight, if any, evidence of lack of assistance and co-operation on his part. As to George Renners, Jr., a more difficult situation is presented. According to his own testimony, he signed a statement at the request of the defendant's attorney which falsely narrated the circumstances favorable to the defendant, already stated. That his conduct in so doing was reprehensible needs only to be stated. Does it prove a breach of that provision in the policy requiring assistance and co-operation on the part of the assured? George Renners, Jr., operating the automobile with the consent of Aloysius Renners, the named assured, was an assured within the terms of the policy and owed the duty of assistance and co-operation which was made a condition of liability by the provisions of the policy. Rochon v Insurance Co.. 114 Conn. 313; 158 Atl. 815; Casualty Co. v Blue, 219 Ala. 37; 121 So. 25. There is uniformity in the decisions that failure to assist and co-operate relieves the insurer from liability. What is a failure to assist and co-operate depends upon the circumstances and is usually a question of fact. Only when the facts are undisputed and only one inference can reasonably be drawn therefrom does it become a question of law. The cases on this general subject are collected and classified in an extensive annotation to the case of Coleman v New Amsterdam Casualty Co., 72 A.L.R. 1443, at 1446, et seq.

Guerin v Indemnity Co. of N. A., 107 Conn. 649; 142 Atl. 268, contains many features similar to the case before us. The court in that case reached the conclusion that there had been no breach of the duty to co-operate and the Supreme Court approved of that decision saying on that subject at pages 270 and 271 of 142 Atl. that:

"It remains to be considered whether there was such a breach of this condition of the policy by the assured. The duty resting upon the assured under this clause of the policy was to render to the defendant co-operation and assistance, presumably assistance in establishing any defense which it might have to an action upon the policy. He signed the statement, Exhibit 1, giving a version of the facts which tended to exonerate him from blame for the accident. It could hardly be said that this constituted any failure in co-operation with the defendant, but rather the reverse. Later, upon the trial. he gave another version of the facts, which was substantially different

from and conflicted with his previous statement, and which was practically a confession that the accident was the result of his negligence. It is not alleged or claimed that Le Clerc testified falsely upon the trial; indeed, it seems to be assumed by the parties and the court, though the finding does not cover that point, that the version of how the accident happened given by him upon the trial, was the correct one. It cannot be said, therefore, that there was a failure of co-operation and assistance by reason of truthful testimony given by Le Clerc upon the trial. A failure to report the accident or to give notice of the suit or to give any information regarding the accident might constitute a breach of this covenant. So if Le Clerc in his statement or his testimony had untruthfully assumed liability for the accident that would have been, to say the least, a failure to co-operate and assist. But, as we have said, the giving of a statement, which, though incorrect, gave a version of the accident which tended to free the assured of any charge of negligence, and therefore to relieve the company of liability to the person injured, cannot be said to constitute a failure to render the co-operation and assistance required of the assured in this clause of the policy. It has been held that a failure to co-operate, within the terms of such provision in a liability policy, is not shown by the fact that the assured gave testimony at an inquest that differed from his testimony at the trial in the absence of anything to show that he willfully testified falsely."

In the case of Automobile Underwriters' Ins. Co. v Long, 63 SW (2d) (Tex.) 356, it appeared that the assured was induced by the agent of the insurer to sign a statement indicating that no liability existed notwithstanding the agent was told the facts were to the contrary. The insured testified to facts inconsistent with his signed statement, and in the action against the insurer to charge it with the judgment, the defense was relied on that the insured had failed to co-operate. On this subject the court at page 359 said:

"In this state of the record, the company cannot complain that Long insisted upon telling the truth rather than abide by statements which the company's agents prepared and induced him to sign, and which he testified he signed under protest.

"A failure to co-operate is not shown by the fact that the assured gave different testimony at the trial from statements theretofore made by him in the absence of

anything to show that he wilfully testified falsely; it not being found that there was any failure to furnish information to the defendant, nor that the information was intentionally false."

We conclude that whether the assured performed his duty of co-operation was a question of fact, the decision of which required the weighing of evidence and the determination of the credibility of witnesses, and that this court would not be justified in disturbing the verdict and the special finding on that subject.

Next it is urged that the court erred in admitting in evidence a letter written by the defendant's adjuster to its claims examiner. The adjuster was a witness and testified fully concerning his dealings with the plaintiff and George Renners, Jr. On cross-examination he identified the letter in which he reported rather fully what he had done. Certain parts of the letter tended to contradict and cast doubt on the correctness of his testimony. The objection seems to be based on the ground that it was a private communication, but we know of no rule excluding a letter for that reason. We think it was competent at least for the purpose of impeachment. Its weight was for the jury to determine.

The defendant requested the following special charge, which was refused:

"The court instructs you, members of the jury, that if you find by a preponderance of the evidence in this case that George Renners, Jr. failed to comply with the conditions of the policy of insurance in evidence in this case providing that the assured shall at all times render to the company all co-operation and assistance in his power, and further that The Yorkshire Indemnity Company, by its attorneys or otherwise notified George Renners, Jr. that the policy was void because of his failure to co-operate, then plaintiff is not entitled to recover and your verdict must be for the defendant, The Yorkshire Indemnity Company."

It seems to us that this charge states the law correctly on the subject of the effect of failure to co-operate. Counsel for the plaintiff contends that the condition of the policy does not require co-operation to the extent stated, but he does not point out the respect in which the charge departs from the terms of the policy and we have been unable to find any departure. He also contends that the charge is so worded that it would have given the jury the impression that the defendant or its attorneys

had the right to decide whether the assured had co-operated or failed to do so. We find no such implication in the language. The charge required a verdict for the defendant only upon a finding by the jury of a failure of the assured to co-operate and notice by the insurer that it considered the policy void on account of such failure. However, for the reason hereafter stated, we find the refusal to give the special charge was not prejudicial.

The defendant also requested the following charge, which was refused:

"The court instructs you that if you find by a preponderance of the evidence that Aloysius Renners and George Renners, Jr. did not co-operate with the insurance company, the court instructs you that it is immaterial to the issues of this case that the insurance company had other information, or that even if the insured 'had co-operated, a recovery might have been obtained by Rohrkemper at a trial of his case against Renners, you must still find for the defendant, The Yorkshire Indemnity Company in this cause."

It seems to us that this is an attempt to state a rule of law applicable to the facts of this case, but that it is not a clear statement of it. If there was an actual failure to co-operate within the meaning of the law, the legal effect could not be influenced or changed by any consideration of other information or evidence in the control of the insurer or by speculation as to the result of the action against the assured on an hypothetical state of the evidence. Coleman v New Amsterdam Casualty Co., supra. We are of opinion that the court was justified in refusing the charge because of its vagueness.

At the request of the defendant, the court gave a special charge clearly and fully defining the law upon the subject of co-operation by the assured, and also submitted at its request the special interrogatory on that subject, which the jury answered in the affirmative. The special charges refused did not furnish any rule by which the jury was to be guided in deciding the issue of co-operation or not, and no guide on any other subject except in the event of a finding that the insured had failed to co-operate. This issue having been found against the defendant under a proper instruction, we are of opinion that no prejudice resulted or could result to the defendant by the refusal to give the special charges.

We have examined the general charge

and find no substantial error in it when taken in conjunction with the special charges and special interrogatory.

For these reasons, the judgment is affirmed.

ROSS, PJ, and HAMILTON, J, concur.