## Wilfred L. Arton et al. *v.* Liberty Mutual Insurance Company

House, C. J., Ryan, Shapiro, Loiselle and MacDonald, Js.

Argued April 5—decided May 11, 1972

*Charles S. Tarpinian,* with whom were *Gerald F. Olmsted* and, on the brief, *Henry Kucharski,* for the appellant (named plaintiff).

*William W. Sprague,* with whom was *Robert D. McGann,* for the appellee (defendant).

SHAPIRO, J. The plaintiff Wilfred L. Arton has appealed from a judgment rendered against him in an action submitted to the trial court on a stipulated statement of facts. These facts, combined with unattacked conclusions of the trial court, disclose that effective November 2, 1965, a policy of insurance had been issued in Connecticut by the defendant which, subject to its terms, conditions, limitations and exclusions, insured Brenda St. Pierre against liability for loss or damage on account of the bodily injury or property damage of any person for which she might be legally obligated.[1] This policy was in full force and effect when, on or about December 11, 1965, St. Pierre and the named plaintiff, operators

---

[1] Two conditions of the policy are relevant to this case.

Condition Number 1 of the policy requires certain notice concerning the bodily injury liability coverage and the property damage liability coverage as follows: "When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonable obtainable information respecting the time, place and occurrence of the accident, the names and addresses of the injured and of available witnesses."

Condition Number 12 of the policy concerning bodily injury

of automobiles, were involved in an accident which resulted in personal injuries and property damage to the named plaintiff.

St. Pierre did not notify the defendant in writing of the time, place and circumstances of the accident, the names and addresses of the injured and available witnesses. She disappeared.

The defendant first received a letter concerning the accident in question on or about June 1, 1966, from Richard Calkins, adjuster for the Nationwide General Insurance Company, subrogee to the property damage claim of the plaintiff Arton. The receipt of this letter was the first actual knowledge which Liberty Mutual had that the accident had occurred. The defendant made efforts to locate St. Pierre without success. When a representative of the defendant attempted to locate St. Pierre at her former place of employment, i.e., St. Francis Hospital in Hartford, Connecticut, the defendant was informed that she had left her employment and was leaving the country. On August 3, 1966, Robert Lyonnais, an employee of the defendant, checked with the motor vehicle department of the state of Connecticut and was informed that St. Pierre's license had expired in January, 1966, and was not renewed. There were no cars registered in her name for that year. Under the mailing dates indicated be-

---

liability coverage and property damage liability coverage contains the following provision requiring the assistance and cooperation of the insured: "The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation, or incur any expense other than that for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

low the defendant sent letters addressed to St. Pierre at the addresses indicated and the letters were returned marked "moved left no address" or other notification indicating that the letters were not delivered: June 16, 1966—Walnut Trail, Coventry, Conn.; August 4, 1966 (certified mail return receipt requested)—963 Capitol Avenue, Hartford, Conn.; August 4, 1966 (certified mail return receipt requested)—Walnut Trail, Coventry, Conn.; August 9, 1966—768 Huntington Avenue, Boston, Massachusetts; August 9, 1966—78 Garden Street, Hartford, Conn.; October 20, 1966 (registered mail)—78 Garden Street, Hartford, Conn.; October 20, 1966 (registered mail)—963 Capitol Avenue, Hartford, Conn.; October 20, 1966 (registered mail)—Walnut Trail, Coventry, Conn.; October 20, 1966 (registered mail)—St. Francis Hospital, Hartford, Conn.; and October 20, 1966 (registered mail)—768 Huntington Avenue, Boston, Massachusetts. The address of St. Pierre shown in the policy was 963 Capitol Avenue, Hartford, Connecticut, and she never notified the company of any change of address.

On October 18 and 19, 1966, the defendant sent out letters to St. Pierre and to the plaintiff's attorney stating that the defendant was denying indemnity and that it would refuse to defend any action brought under the terms of the policy due to a breach by St. Pierre of the notice and cooperation clauses of the policy. This was the first notice to the plaintiff of the defendant's intent to disclaim such coverage.

In an action instituted against St. Pierre by Arton by writ dated November 18, 1966, the plaintiff Arton, on or about September 15, 1967, recovered a default judgment against St. Pierre in the amount of $20,000 and his costs. Although the attorney for

the plaintiff Arton mailed to the defendant a copy of the writ, summons and complaint on or about November 30, 1966, the defendant did not cause an appearance to be entered for St. Pierre and did not defend the actions brought by the plaintiff against St. Pierre. The judgment has not been paid although more than thirty days have elapsed since the entry of said judgment. The plaintiff is subrogated under § 38-175 of the General Statutes to all rights that St. Pierre has against the defendant Liberty Mutual Insurance Company.[2]

Consistent with these facts, the trial court concluded that under the conditions of the policy, St. Pierre had a duty when the accident occurred to give written notice to the defendant or any of its authorized agents as soon as could reasonably be expected under the circumstances, and to render to the defendant cooperation and assistance; that St. Pierre failed to comply with the condition of the policy requiring her to give written notice of the accident; that St. Pierre substantially and materially failed to comply with the condition that required her to assist and to cooperate with the defendant; that the defendant made diligent search for St. Pierre, but that her conduct made it impos-

[2] Section 38-175 of the General Statutes, entitled "Liability of insurer under liability policy," provides in pertinent part: "Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

sible for the defendant to get in touch with her in the face of an impending trial; that the defendant is not barred by either waiver or estoppel from asserting these material and substantial breaches of the policy's notice and cooperation conditions as grounds for absolving it from liability; that the defendant's duty to defend was dependent on St. Pierre's compliance with the notice and cooperation clauses of the policy; that St. Pierre lost any right she may have had to enforce a claim against the defendant based on a judgment against her arising out of the accident because of her failure to give notice and because of her disappearance and failure to assist and cooperate with the defendant; and that thus the plaintiff is not entitled to recover of the defendant on any of the causes of action set forth in the complaint.

The plaintiff's assignment of error which requires discussion is directed to the overruling of his claims of law related to both the notice and cooperation clauses. The obligation of the assured to give information of the accident to the defendant in her written notice under Condition Number 1 is an independent requirement, separate from the duty to cooperate with and assist the insurer under Condition Number 12. See note, 98 A.L.R. 1465, 1472. "The purpose of the requirement that the assured in his notice give the insurer information as to the accident, is to afford the latter a reasonable opportunity for an investigation of the facts, rather than to give it full information upon the basis of which it might proceed to a disposition of the case." *Rochon* v. *Preferred Accident Ins. Co.*, 118 Conn. 190, 197, 171 A. 429. The cooperation clause, as is evident from the terms of the paragraph as a whole and from the context of the sentence referring to

cooperation, applies rather to conduct of the assured in connection with proceedings subsequent to the notice, looking to a final determination of the insurer's liability.

We shall confine our discussion to those claimed errors surrounding the violation of the cooperation clause, for the view that we take of those claims is dispositive of this appeal.

The trial court overruled the plaintiff's claim of law that the breach of the cooperation clause was not a material and not a substantial breach of that condition. While in the absence of estoppel, waiver or other excuse, cooperation by the assured in accordance with the provision of the policy is a condition the breach of which puts an end to the insurer's obligation (*Curran* v. *Connecticut Indemnity Co.*, 127 Conn. 692, 695, 20 A.2d 87; *Guerin* v. *Indemnity Ins. Co.*, 107 Conn. 649, 654, 142 A. 268; *Metropolitan Casualty Ins. Co.* v. *Colthurst*, 36 F.2d 559, 561 [9th Cir.]; *United States Fidelity & Guaranty Co.* v. *Wyper*, 60 F.2d 856, 858 [10th Cir.]; *Bruggeman* v. *Maryland Casualty Co.*, 73 F.2d 587, 588 [3d Cir.]; *Coleman* v. *New Amsterdam Casualty Co.*, 247 N.Y. 271, 276, 160 N.E. 367; *Marley* v. *Bankers Indemnity Ins. Co.*, 53 R.I. 289, 292, 166 A. 350), the condition of cooperation with an insurer is not broken by a failure of the insured in an immaterial or unsubstantial matter. *Rochon* v. *Preferred Accident Ins. Co.*, supra, 198; notes, 72 A.L.R. 1446, 1455, 98 A.L.R. 1465, 1469. "In determining whether a condition to co-operate has been broken, we are dealing with contract rights, and if there has been a breach, prejudice need not appear. *Coleman* v. *New Amsterdam Casualty Co.*, . . . [247 N.Y. 271, 276, 160 N.E 367]. The reason why immaterial and unsubstantial failures of an assured do not consti-

tute a breach is because they are not included within the fair intendment of the requirement that the assured co-operate, and lack of prejudice to the insurer from such failure is a test which usually determines that a failure is of that nature." *Curran* v. *Connecticut Indemnity Co.,* supra, 696.

The purpose of the cooperation provision is "to protect the interests of the insurer." *Rochon* v. *Preferred Accident Ins. Co.,* supra. If insurers could not contract for fair treatment and helpful cooperation from the insured, they would, at the very least, be severely handicapped in determining how and whether to contest the claim, and might, in addition, be particularly susceptible to possible collusion between the participants in the accident. *Rochon* v. *Preferred Accident Ins. Co.,* 114 Conn. 313, 316, 158 A. 815; notes, 139 A.L.R. 771, 773, 98 A.L.R. 1465, 1467. This is particularly true where the insured is the only nonadversary source of information available to the insurer. Note, 98 A.L.R. 1465, 1470.

"Conduct on the part of an assured which makes it impossible for the insurer to get in touch with him in the face of an impending trial, although diligent search is made for him, could rarely, if ever, be regarded as an unsubstantial or immaterial failure to co-operate. *Goldberg* v. *Preferred Accident Ins. Co.,* 279 Mass. 393, 397, 181 N.E. 235; *Fagan* v. *Hartford Accident & Indemnity Co.,* 114 N.J.L. 281, 285, 176 A. 388; *Metropolitan Casualty Ins. Co.* v. *Blue,* 219 Ala. 37, 42, 121 So. 25; *Bauman* v. *Western & Southern Indemnity Co.,* 230 Mo. App. 835, 846, 77 S.W. (2d) 496." *Curran* v. *Connecticut Indemnity Co.,* supra, 696. The plaintiff, however, claims that the trial court erred in overruling his claim of law that the defendant did not use diligence and employ its best efforts to locate St. Pierre.

The requirement that the insurer make a diligent search and inquiry is of course to prevent collusion between the insured and the insurer. See *Commercial Contractors Corporation* v. *American Ins. Co.,* 152 Conn. 31, 40, 202 A.2d 498; notes, 60 A.L.R.2d 1146, 1167, 98 A.L.R. 1465, 1476, 72 A.L.R. 1446, 1475. Where the defendant raises the issue of the violation of the cooperation clause of the policy by a special defense, the burden is on the plaintiff to prove cooperation by the insured. *Manthey* v. *American Automobile Ins. Co.,* 127 Conn. 516, 519, 18 A.2d 397; *Rochon* v. *Preferred Accident Ins. Co.,* 118 Conn. 190, 195, 171 A. 429; *Harly* v. *Eagle Indemnity Co.,* 108 Conn. 563, 565, 143 A. 847; note, 98 A.L.R. 1465, 1468. There was no allegation of collusion presented in this case, nor was evidence offered by the plaintiff to excuse or justify the absence of the insured. See *Commercial Contractors Corporation* v. *American Ins. Co.,* supra; note, 60 A.L.R.2d 1146, 1149. By contrast, on the evidence presented on this issue by the insurer, the trier of fact was justified in concluding that the defendant made a good faith, though unsuccessful, effort to locate the insured. We cannot hold that on the evidence in the case a conclusion that St. Pierre had failed to meet the condition of the policy requiring her to cooperate with the defendant was not a reasonable one.

The plaintiff assigns as error the denial of his claim of law that the defendant could not make a disclaimer and refuse to defend because of an alleged breach of the cooperation clause when the necessity for cooperation was not yet present on October 19, 1966, since an action had not yet been instituted on that date. The speedy answer to this claim is that the cooperation clause in part requires the insured's assistance in effecting settlements. Thus,

the need for cooperation can arise before the action is brought. In this case the plaintiff admits that between June 2, 1966, and October 19, 1966, the defendant was in contact with the plaintiff's attorney several times, requested that "specials" be sent and dealt with the plaintiff "in the normal course of adjustment."

The plaintiff's principal contention is that the conduct of the defendant was such as to excuse St. Pierre from any obligation to cooperate with it. In this regard, the plaintiff assigns as error the overruling by the trial court of his claim of law that the duty of an insurer to defend is absolute and independent of the conditions of the policy and that by its unqualified refusal to defend St. Pierre in the original action on October 19, 1966, the defendant breached this duty and thereby waived or is estopped to assert its right to insist on any compliance by the plaintiff with the conditions of the policy. We cannot agree.

Even though the company had a duty to defend under the coverage afforded, under the terms of the policy that duty to defend was still dependent on the insured's compliance with the cooperation requirements of the policy. See *Andover* v. *Hartford Accident & Indemnity Co.*, 153 Conn. 439, 444, 217 A.2d 60. The insured's failure to cooperate was a material breach of the policy. The defendant has a duty to defend as well as to indemnify conditioned on the insured's compliance with all the conditions of the policy. See *Guerin* v. *Indemnity Ins. Co.*, 107 Conn. 649, 653, 142 A. 268. The case at bar is not one dealing with the insurer's duty to defend where the sole issue is whether the policy "covers" the injury in dispute. See *Keithan* v. *Massachusetts Bonding & Ins. Co.*, 159 Conn. 128, 139, 267 A.2d 660; *Schur-*

*gast* v. *Schumann,* 156 Conn. 471, 483, 490, 242 A.2d 695; *Missionaries of the Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.,* 155 Conn. 104, 230 A.2d 21; *Smedley Co.* v. *Employers Mutual Liability Ins. Co.,* 143 Conn. 510, 516, 123 A.2d 755; note, 50 A.L.R.2d 458. That is admitted in this case.

Under the circumstances, the defendant, having disclaimed liability when the breach was established, could have either refused to defend the case or could have defended under a reservation of its rights under the policy. *Keithan* v. *Massachusetts Bonding & Ins. Co.,* supra; *Missionaries of the Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.,* supra, 113; *Andover* v. *Hartford Accident & Indemnity Co.,* supra, 445; *Commercial Contractors Corporation* v. *American Ins. Co.,* supra; *State* v. *Aetna Casualty & Surety Co.,* 138 Conn. 363, 370, 84 A.2d 683; *Manthey* v. *American Automobile Ins. Co.,* supra, 518; *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 547–48, 173 A. 783; *Goergen* v. *Manufacturers Casualty Ins. Co.,* 117 Conn. 89, 93, 166 A. 757; *Basta* v. *United States Fidelity & Guaranty Co.,* 107 Conn. 446, 450, 140 A. 816. The defendant was warranted in electing the course taken, which was effective to extinguish its liability under the terms of the policy. See *Commercial Contractors Corporation* v. *American Ins. Co.,* 152 Conn. 31, 39, 202 A.2d 498. It was under no duty to have followed the course urged by the plaintiff, for to do so would very likely have given rise to questions of waiver or estoppel. See *MacKay* v. *Aetna Life Ins. Co.,* supra; note, 70 A.L.R.2d 1197, 1199, 1203. In *Goergen* v. *Manufacturers Casualty Ins. Co.,* supra, 93–94, we said: "It is generally recognized that waiver of an assured's breach of the cooperation clause, or estoppel to take advantage of it, may arise from the in-

surer undertaking and continuing with the defense of an action against him with knowledge of the facts constituting the breach. . . . The rule has been applied and waiver or estoppel held to obtain in most cases where the insurer had full knowledge of the facts constituting a breach, by failure to cooperate, before undertaking the defense of the action against the assured, but elected to proceed with it without notifying the assured that it disclaimed liability or that by continuing in the case it did not waive any defense based upon the breach, until after an unfavorable verdict. *Daly* v. *Employers Liability Assur. Corp. Ltd.,* . . . [269 Mass. 1, 168 N.E. 111]; *Francis* v. *London Guarantee & Accident Co.,* 100 Vt. 425, 138 Atl. 780; *Gerka* v. *Fidelity & Casualty Co.,* 251 N.Y. 51, 167 N.E. 169; *Lunt* v. *Aetna Life Ins. Co.,* 261 Mass. 469, 159 N.E. 461; *Killeen* v. *General Accident F. & L. Assur. Corp.,* 227 N.Y. Sup. 220; *Brandon* v. *St. Paul Mercury Indemnity Co.,* 132 Kan. 68, 294 Pac. 881; 72 A.L.R., note, p. 1493. As stated in the *Francis* case (100 Vt. 425) *supra,* the reason is that where, although the facts constituting the breach were known to the insurer through its counsel before trial, it chose to go on, deliberately took the chance of a trial, and only after an adverse verdict made any claim that it was released from liability by the assured's conduct; 'this action was so inconsistent with a purpose to assert the forfeiture and so convincing of an intent to waive it that it must be held to amount to a waiver as a matter of law.' "

Even if the plaintiff were correct in his claim that the defendant had an absolute duty to appear for St. Pierre in the original action, he can still not prevail on his claim that the defendant, by not appearing, is either estopped to claim a breach of the condition

that St. Pierre cooperate with it or has waived compliance with that condition. If St. Pierre were bringing this action, she could not claim an estoppel on this ground because there is no evidence that she knew of the failure of the defendant to appear for her and consequently no basis for claiming that she was misled to her injury, which would be essential to the establishment of an estoppel. *Curran* v. *Connecticut Indemnity Co.*, 127 Conn. 692, 697, 20 A.2d 87; *O'Connor* v. *Metropolitan Life Ins.*, *Co.*, 121 Conn. 599, 610, 186 A. 618. Nor could she claim that the failure of the defendant to appear for her constituted a waiver of the requirement in the policy that she cooperate with it. As far as appears, she did not know whether it had made such an appearance. Waiver of this nature is an excuse which justifies the other party to the contract in not performing the condition on which liability depends and works a change in the contractual rights of parties. 5 Williston, Contracts (3d Rev. Ed.) § 689. This necessarily implies that the circumstances on which the waiver is claimed to rest must come to the knowledge of the party to the contract seeking to take advantage of it, for only so can she who is claiming the excuse find justification for not performing. Under the circumstances of this case, the failure of the defendant to appear for St. Pierre did not excuse her from her obligation to cooperate with it.

Under General Statutes § 38-175, the plaintiff's rights against the defendant are by subrogation to those of St. Pierre as an insured and, in the absence of collusion between the insured and the insurer, are no different or more advantageous as to the consequences of her breach but, equally, the plaintiff stands in St. Pierre's shoes as to any waiver or

estoppel which would preserve availability of the latter's rights notwithstanding such breach. *Commercial Contractors Corporation* v. *American Ins. Co.,* supra, 40; *Curran* v. *Connecticut Indemnity Co.,* supra, 699; *Connecticut Wholesale Drug Co.* v. *New England Fire Ins. Co.* 121 Conn. 514, 518, 186 A. 551; *Bartlett* v. *Travelers Ins. Co.,* 117 Conn. 147, 153, 167 A. 180; *Goergen* v. *Manufacturers Casualty Ins. Co.,* 117 Conn. 89, 93, 166 A. 757; *Rochon* v. *Preferred Accident Ins. Co.,* 114 Conn. 313, 315, 158 A. 815; *Guerin* v. *Indemnity Ins. Co.,* supra, 653; *Daly* v. *Employers Liability Assurance Corporation, Ltd.,* 269 Mass. 1, 168 N.E. 111; notes, 139 A.L.R. 771, 808, 98 A.L.R. 1465, 1486, 72 A.L.R. 1446, 1499, 1506. The statute does not, for the benefit of the injured person, deprive the defendant of any defense ordinarily open to an insurer in an action by the assured. *Guerin* v. *Indemnity Ins. Co.,* supra.

The plaintiff's final claim which merits discussion is directed at the overruling of his claim of law that the defendant by its conduct waived its right to disclaim liability or is estopped from doing so, for prior to disclaiming liability the defendant dealt with the plaintiff in the normal course of adjustment and delayed in asserting its disclaimer.

We preface our discussion of this claim by observing that the insurer cannot be said to have waived its rights or to be estopped to deny liability because of lack of cooperation when it waits to repudiate until it is properly and reasonably convinced by its investigation that proper grounds for repudiation have arisen; note, 139 A.L.R. 771, 809; especially where the repudiation was given in sufficient time to allow the plaintiff an opportunity to avoid the expense and costs incident to the pursuit of his action to a verdict and judgment which, without the insur-

er's indemnity, he might conclude would be valueless. *Goergen* v. *Manufacturers Casualty Ins. Co.,* supra, 95.

Nothing in the record before us compels the conclusion urged by the plaintiff that the defendant delayed unreasonably or intentionally in disclaiming liability. The trial court did not err in concluding that no waiver or estoppel arose from the undisputed facts presented to it.

Yet, even if we could conclude that the defendant had delayed unreasonably, St. Pierre, if she were bringing this action, could not claim an estoppel based on this conduct in the absence of any evidence that it came to her knowledge, because if it did not she could not have been misled to her injury. Compare *Curran* v. *Connecticut Indemnity Co.,* supra, 699, with *Goergen* v. *Manufacturers Casualty Ins. Co.,* supra. This conduct would have had to come to St. Pierre's notice in order to have justified in her a belief that the company was not going to insist on further cooperation so as to form the basis of a claim of waiver on her part. As it did not, for reasons already given, no waiver can be found which would excuse St. Pierre for her failure to meet the requirements of the policy that she cooperate with the defendant. *Curran* v. *Connecticut Indemnity Co.,* supra, 699; *Nevil* v. *Wahl,* 228 Mo. App. 49, 58, 65 S.W.2d 122.

As St. Pierre could not claim either an estoppel or a waiver, her failure to cooperate with the defendant is a good defense in the present action. The plaintiff could not in any event have performed St. Pierre's obligation to cooperate with the defendant in the defense of the action, particularly as he was an adverse party to the suit. *Curran* v. *Connecticut Indemnity Co.,* supra, 700.

We conclude that as St. Pierre could not have recovered on the policy the amount of any judgment rendered against her, the plaintiff cannot prevail in this action.

There is no error.

In this opinion the other judges concurred.