[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Mrs. Muzafere Beka, brings this action in a single count claiming, alternatively, that she is entitled, under General Statutes § 38a-321, to payment of a default judgment rendered in her favor against her husband Bashkim Beka. Alternatively that she is entitled to payment under the uninsured motorist coverage of the insurance policy written on the vehicle. The vehicle is a 1990 Chevrolet. The named insured ("Name of insured") on the policy declaration sheet is Mr. Bashkim Beka.
Mr. and Mrs. Beka are natives of Yugoslavia. Mrs. Beka does not have a driver's license. The automobile was owned by her husband the named insured, Mr. Bashkim Beka.
The accident occurred on May 10, 1992 in the State of New York. Mr. Bashkim Beka was the operator of the automobile. Mrs. Beka was riding as a passenger. There were other passengers in the car.
The parties have stipulated that on said May 10, 1992 the Allstate policy was in effect. That the Allstate policy CT Page 1319-PPPP provided for uninsured motorist benefits up to $20,000 per person. That on March 24, 1994 a judgment entered for Mrs. Beka against Mr. Bashkim Beka in the amount of $14,000. Allstate Insurance Company has denied liability coverage to satisfy the judgment entered against Mr. Bashkim Beka. Liability is not being contested as concerns the underlying motor vehicle accident.
This court takes notice of Docket #CV94-0018352 Superior Court Judicial District of Waterbury. The file reveals, and the parties herein do not contest, that the judgment was entered in that case on March 24, 1994, McDonald J., after a hearing in damages on that date, the entry of default for failure to appear having occurred on February 2, 1994.
Mr. and Mrs. Beka were residents of the State of Connecticut. The insurance policy declaration sheet lists their address as 144-2 Jersey Street, Waterbury, Connecticut. The accident was reported to Allstate the day after the accident, i.e. reported on May 11, 1992. It was reported that all of the occupants of the vehicle were injured. Mrs. Muzafere Beka does not know what agent was the producer of the policy. The husband apparently obtained the coverage through the assigned risk pool. The court knows of no agent designated to act as intermediary between the insurer and the insureds for the furnishing of claim forms or for the rendering any assistance in the processing of the injury claim. The insurer may have processed the property damage (collision) claim, but sent no injury claim forms or took any other cooperative steps to respond to the personal injury claims reported to it the day after the accident.
Mrs. Beka sustained injuries which manifested themselves in the symptomatology of severe frontal and suboccipital headache soon after the accident. She attempted to treat herself with aspirin, ice and heat. She experienced moderate constant neck pain and soreness bilaterally with radiation into both shoulders. She also suffered from constant low back pain and bilateral spasm with radiation into the hips and buttocks bilaterally.
After attempting to tough it out, as the count uses that term in the vernacular, for a long period of time, the plaintiff realized that she needed medical help. She came under the care of Dr. Steven Rosa, a Chiropractic physician, on February 9, 1993. Dr. Rosa, upon examination, found that she was CT Page 1319-QQQQ encountering muscle spasm of the anterior and posterior paravertebral musculature bilaterally, with accompanying pain of the affected areas, as well as pain and spasm in the thorascolumbar area. His diagnosis was acute moderate — severe sprain/strain to both areas.
There followed a series of treatments from February 9, 1993 to July 9, 1993, consisting of manual manipulation, manual massage and ultrasound. As of July 9, 1993 Dr. Rosa determined that she had reached maximum medical improvement and determined that she had a 5% permanent partial disability of the neck.
It appears that the court is urged to draw on adverse inference as to injuries, or as to the extent thereof, by virtue of Mrs. Beka's failure to seek professional medical treatment for a substantial period of time after the accident. The court declines to do so. Quite to the contrary the court finds that Mrs. Beka, a relatively young woman who, though having difficulty with English, testified candidly, and is both sincere and credible. Her delay in treatment was due solely to an old fashioned and old world concept of self-reliance and self-help, which may be somewhat uncommon in modern American life. But this is neither uncommon nor unanticipated as concerns persons who are attempting to adjust to the historic American experience of being strangers in a strange land.
On August 3, 1993 Attorney Crone notified Allstate, by certified letter, that claim was being made on behalf of Mrs. Beka, therein identifying the insured, the policy number and the date of loss. The transmittal included the police report and stated that bills and reports were being gathered together and would be forwarded. On October 11, 1993 the bills and report of Dr. Rosa were forwarded to Allstate. Notice was also given that an uninsured motorist claim was being submitted. It is unclear as to why an uninsured motorist claim was noticed at that time, as there was a liability policy in effect and there is nothing in the evidence, exhibits or briefs to indicate that Allstate was declining liability coverage for any reason at that point in time.
No response from Allstate appears in the record. Suit was commenced by Mrs. Beka against Mr. Beka by service of process, abode service, on December 8, 1993. Thereafter there appears to be a continuing breakdown of communication. Allstate claims in the brief and in the evidence, but not in the pleadings, that CT Page 1319-RRRR Mr. Beka, the operator and named insured, did not forward the complaint, the process, to Allstate, and hence it claims in the brief that this is a violation of that duty as specified in Part E Section B2 of the policy. Assuming, arguendo, the accuracy of that claim, no evidence is furnished to the court as to why that would have occurred. There is certainly no evidence to indicate that the plaintiff Mrs. Beka knew of or had anything to do with any such failure, or that she would have anything to gain by any such failure.
The plaintiff proceeded to obtain a default for failure to appear on February 2, 1994. No reason is advanced to this court as to why plaintiff's counsel did not, or would not have inquired of Allstate as to why it was not appearing in the case, although the court knows of no legal obligation to make such contact. There then appears to be no further written contact or oral contact between plaintiff's counsel and Allstate until plaintiff's letter of August 3, 1994, some six months after the entry of default and more than four months after entry of judgment.
The court draws the following inferences from the above facts. That Allstate was prepared to wait out the plaintiff in the hope that the statute of limitations would pass, thereby having to not address what obviously was a clear case of liability with early notice of injury. Counsel was prepared to await the passage of four months post judgment to foreclose the prospect of reopening the judgment. Each party had the legal right to do that. The unfortunate end result of that conduct, however, would be either that Mr. Beka, the insured, would be exposed to personal jeopardy through an unsatisfied judgment, or that Mrs. Beka, through an unsatisfied or unsatisfiable judgment would be provided no compensation for injuries for which she was clearly entitled. This court does not condone a serious claim being turned into a game of cat and mouse by the representatives of the parties. As aforesaid, the plaintiff brings this action under the provisions of General Statutes § 38a-321 which gives to the judgment debtor a direct right of recovery against the insurer.
 "The intention of the act is to give the injured person the same rights under the policy as the insured, and to prevent his being deprived of those rights by a cancellation of the policy after the assured's liability to him has accrued."
CT Page 1319-SSSS
Guerin v. Indemnity Co., 107 Conn. 649, 653 (1928).
The circumstances of this case must be distinguished from those situations in which the insured has placed the insurer within a circumstance whereby the insurer is exposed to liability by virtue of false information, fraud, or the like, thereby depriving the insurer of recognizable protective contract benefits and provisions to which an insurer would be clearly entitled in the realistic and practical application of the policy provisions. See Rochon v. Preferred Accident Ins.Co., 118 Conn. 192, 198 (1934). No such circumstances exist herein. Further, there is absolutely no evidence, or hint, of collusion or of any other circumstances which would work to the disadvantage of the insurer.
If it be said that the defendant was deprived of the opportunity to present defenses to the damage aspect of the case, by virtue of not knowing of the hearing in damages, suffice it to say that in the context of this action, claiming alternatively uninsured motorist damages, the defendant had and took advantage of a full opportunity to present evidence and to contest the extent and propriety of both economic and noneconomic damages. Having been given that opportunity, in that context, the court concludes that the judgment rendered by Judge Mcdonald [McDonald] was conservative indeed and was quite favorable to the defendant, bearing in mind the nature and extent of the injuries. The court additionally finds that the defendant, in this case, did not plead any breach of contract on the part of its insured Mr. Beka, and hence the pleadings would not technically frame that issue for this court. Rochon v.Preferred Accident Ins. Co., supra, p. 195.
Lastly, the defendant claims that under New York law, the plaintiff has not proven that she suffered "serious injury". The defendant has not produced evidence of New York law. A statement in the brief as to New York law is not evidence. Yet, had that been accomplished, the court would not conclude that a 5% permanent impairment to the neck with cost of medical treatment of $2,845, is not a "serious injury".
The court concludes that the plaintiff is entitled to and is hereby awarded judgment in the amount of $14,000 as against the defendant, as provided by General Statutes § 38a-321, together with statutory costs. CT Page 1319-TTTT
Accordingly, the court does not deem it necessary to reach the issue of the applicability of the uninsured motorist claim in this case. Suffice it to state that under the particular and limited circumstances of this case, the plaintiff being a separate and specific party to this contract as an additional insured, owed specific contract duties separate and apart from and independent of the named insured, and the insurer having received a specific premium for this uninsured motorist coverage for injuries sustained while occupying this specific vehicle, a defense to the applicability of the uninsured motorist coverage would be subject to the highest possible judicial scrutiny
L. PAUL SULLIVAN, J.